DOMINIC M. CAROLLO, OSB #093057
NOLAN G. SMITH, OSB #215034
AUDREY F. BOYER, OSB #106560
Carollo Law Group
Mail: P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com
Email: nsmith@carollolegal.com
Email: aboyer@carollolegal.com

SARA GHAFOURI, OSB #111021
GREG HIBBARD, OSB #183602
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
Email: ghibbard@amforest.org
*Attorneys for Proposed Defendant-Intervenors*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **CASCADIA WILDLANDS,**<br><br>*Plaintiff*,<br><br>vs.<br><br>**DOUG BURGUM**, Secretary of the United States Department of the Interior; **U.S. DEPARTMENT OF THE INTERIOR**; **STEVE PEARCE**, Director of the United States Bureau of Land Management; and **BUREAU OF LAND MANAGEMENT**,<br><br>*Defendants*,<br><br>and | Civil Case No. 6:26-cv-1262<br><br>**[PROPOSED] DEFENDANT-INTERVENORS' MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**<br><br>THE HONORABLE AMY E. POTTER |

**AMERICAN FOREST RESOURCE COUNCIL,** an Oregon non-profit corporation, and **ASSOCIATION OF O&C COUNTIES,** an unincorporated Association,

*Proposed Defendant-Intervenors.*

**TABLE OF CONTENTS**


LR 7-1(A) CERTIFICATION ........ 1

MOTION ........ 1

MEMORANDUM ........ 1

I. INTRODUCTION. ........ 1

II. INTERESTS OF INTERVENORS. ........ 3

A. American Forest Resource Council. ........ 3

B. Association of O&C Counties. ........ 6

III. ARGUMENT. ........ 8

A. Standards for Intervention. ........ 8

B. Proposed Intervenors Have a Right to Intervene. ........ 10

1. The motion is timely. ........ 10

2. Proposed Intervenors have interests that are related to the subject of the action. ........ 11

3. Proposed Intervenors would be substantially affected by the disposition of this action. ........ 13

4. Proposed Intervenors are not adequately represented by the existing parties. ........ 14

C. Alternatively, the Court May Grant Permissive Intervention. ........ 17

IV. CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Cases**

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018) ........ 15

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ........ 13

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) ........ 15

*Capitol Indem. Corp. v. Reflections Acad., Inc.*,
No. CV 21-57-DLC, 2021 WL 5329936 (D. Mont. Nov. 16, 2021)........ 16

*Citizens of Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ........ 15

*Ctr. For Biological Diversity v. Gould*,
Case No. 1:15-cv-01329-WBS-GSA, 2015 WL 6951295 (E.D. Cal. Nov. 10, 2015)........ 13

*Defenders of Wildlife v. U.S. Fish & Wildlife Serv.*,
2022 WL 3656444 (9th Cir. Aug. 24, 2022) ........ 18

*Donaldson v. United States*,
400 U.S. 517 (1971)........ 11

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ........ 14

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ........ 10

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3rd Cir. 1998)........ 13

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1084 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ........ 10, 18

*Mont. Elders for a Livable Tomorrow v. U.S. Office of Surface Mining*,
No. CV 15-106-M-DWM, 2015 WL 12748263 (D. Mont. Dec. 11, 2015)........ 15

*N. Cascades Conservation Council v. U.S. Forest Serv.*,
No. 2:20-CV-01321-RAJ-BAT, 2021 WL 871421 (W.D. Wash. Mar. 9, 2021) ........ 13

*Native Ecosystem Council v. Marten*,
No. CV 17-153-M-DWM, 2018 WL 2364293 (D. Mont. May 24, 2018)........ 14, 16

*Nw. Forest Res. Council v. Glickman*,
82 F.3d 825 (9th Cir. 1996) ........ 10

*Orange Cty. v. Air California*,
799 F.2d 535 (9th Cir. 1986) ........ 10

*Sierra Forest Legacy v. Sherman*,
646 F.3d 1161 (9th Cir. 2011) ........ 17

*Sw. Ctr. for Biological Diversity v. Babbitt*,
150 F.3d 1152 (9th Cir. 1998) ........ 15

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ........ 9, 13, 16

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) ........ 11

*WildEarth Guardians v. Hoover*,
No. 1:16-CV-65-M-DWM, 2016 WL 7388316 (D. Mont. Dec. 20, 2016) ........ 11

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) (*en banc*) ........ 9, 11, 13

**Statutes**

43 U.S.C. § 2601 ........ 2

43 U.S.C. § 2605 ........ 2, 6

**Rules**

Federal Rule of Civil Procedure 24 ........ 1, 3, 9, 10, 13, 17, 18

Local Rule 7-1 ........ 1

## LR 7-1(A) CERTIFICATION

Pursuant to Local Rule 7-1, Proposed Intervenors American Forest Resource Council (AFRC) and the Association of O&C Counties (AOCC) (collectively, Proposed Intervenors) certify that undersigned counsel conferred with counsel for Plaintiff and Federal Defendants on this motion. Federal Defendants have advised that they take no position on this motion. Counsel for Plaintiff indicated that they take no position on this motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure (Rule) 24, Proposed Intervenors respectfully move to intervene as defendants in this case challenging the Bureau of Land Management's (BLM) 2016 Northwestern and Coastal Oregon Resource Management Plan (2016 RMP) and the approval of the Aloha Trout Forest Management Project (Aloha Trout Project).

This Court should grant Proposed Intervenors' motion to intervene as of right under Rule 24(a)(2) because they satisfy all four intervention factors. First, this motion is timely because it is early in the litigation. Plaintiff filed their First Amended Complaint on August 24, 2026 (ECF No. 12). Because Federal Defendants have not filed their answer or responsive pleading and no proposed briefing schedule is in place, there is ample time for Proposed Intervenors to be permitted to intervene in this case without prejudice or undue inconvenience to any party or the Court.

Second, Proposed Intervenors have a significant protectable interest in this litigation. Proposed Intervenor AFRC represents forest products manufacturers and affiliated companies who are frequent purchasers of timber sales on the BLM-administered lands in western Oregon. Plaintiff's Amended Complaint threatens to halt or impede all commercial harvest on the BLM's timberlands managed under the 2016 RMP. AFRC's members rely on volume harvested from the

BLM's timberlands to supply their manufacturing facilities. A loss of commercial harvest from the BLM's lands would equate to hundreds, if not thousands, of lost jobs. Specific to the Aloha Trout Project, AFRC member Hull Oakes has purchased the Adipose Timber Sale and AFRC member Hampton Tree Farms, LLC has purchased the Dandi Lyon and Golden Nectar Timber Sales.

AOCC represents and advocates for counties in western Oregon that receive timber receipts through commercial harvest of the BLM lands administered under the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 (O&C Act). 43 U.S.C. §§ 2601, 2605. The O&C counties are entitled to 75 percent of the timber receipts from sales offered on the O&C timberlands. 43 U.S.C. § 2605. Timber harvest authorized under the 2016 RMP generates receipts which are critical to funding essential county services, like roads, policing, and children's and veterans' services. Enjoining the commercial harvests authorized under the 2016 RMP would eliminate all essential county funding generated under the O&C Act. Additionally, the Aloha Trout Project specifically will generate vital timber receipts that will support the social and economic well-being of these rural counties.

<u>Third</u>, Proposed Intervenors' significant protectable interests will be adversely affected if Plaintiff is successful in their lawsuit and the 2016 RMP and Aloha Trout Project are vacated.

<u>Fourth</u> and finally, Federal Defendants do not adequately represent Proposed Intervenors' interests in this litigation. Federal Defendants and Proposed Intervenors may take different positions on whether the 2016 RMP is a rule subject to the Congressional Review Act. *See* ECF 12 ¶¶ 46–53. In addition, Federal Defendants' responsibilities are broader than the movants' local, regional, and business interests. Finally, the equitable relief sought by Plaintiff would require the evaluation of equitable factors—such as the cost of an injunction on AFRC's

members, AOCC's member-counties, and the greater western Oregon economy—that Federal Defendants cannot represent. Thus, intervention as of right is warranted.

In the alternative, this Court may grant permissive intervention under Rule 24(b) because Proposed Intervenors' claims and defenses share common questions of law and fact with the main action here.

This motion is supported by the accompanying Memorandum and the Declarations of Andy Geissler, Nathan Nystrom, and Tim Freeman, a proposed motion to dismiss and a proposed answer.

## MEMORANDUM

### I. INTRODUCTION

Plaintiff's complaint threatens economic devastation to Proposed Intervenors, their members, their employees, and the citizens of western Oregon, as well as environmental degradation across millions of acres of timberland. For ten years, the BLM has managed its lands under the guidance of the 2016 RMP.[1] Timber sales, fuels treatments, trail improvements, wildlife habitat restoration projects, and more have been approved and implemented in that time, bringing great benefits to local economies and ecosystems alike. Enter Plaintiff—displeased that a mere *20 percent* of the BLM's timberlands are being managed for timber, Plaintiff seeks to enjoin <u>all</u> actions and authorizations issued under the 2016 RMP since its implementation. Whether those authorizations are timber sales, right of way agreements, fuels reduction in the wildland urban interface, or wildlife habitat restoration is of no matter; Plaintiff seeks to enjoin *every* action from the 2016 RMP. In its place, Plaintiff asks the Court to order implementation of the 1994 Northwest Forest Plan (NWFP), a 32-year-old plan which by all accounts has been a complete failure. Under the Northwest Forest Plan, which is still being implemented by the Forest Service, wildfire risk and prevalence has skyrocketed, the Northern Spotted Owl (the impetus for the NWFP) has lost more habitat from wildfire than it has gained from aging forests, and the Forest Service has struggled to offer any timber production under the NWFP. This would be a disaster for the O&C timberlands and for the interests of Proposed Intervenors.

---

[1] The 2016 RMP contains management directives for the BLM which address issues such as: (1) air quality; (2) cultural resources; (3) fire, fuels, and wildfire response; (4) fisheries; (5) forest management; (6) hydrology; (7) invasive species; (8) lands, realty, and roads; (9) livestock grazing; (10) minerals; (11) paleontological resources; (12) rare plants and fungi; (13) recreation and visitor services; (14) soil resources; (15) sustainable energy; (16) trails and travel management; (17) visual resource management; and (18) wildlife. Decl. of Andy Geissler (Geissler Decl.) ¶ 7.

Proposed Intervenors are entitled to intervene in this case. Proposed Intervenors represent forest products manufacturers and affiliated companies who are frequent purchasers of timber sales on the BLM-administered lands in western Oregon, as well as the O&C counties who rely on shared timber receipts from the BLM's timber sales to fund essential county services.

Proposed Intervenors have a direct interest in upholding the current 2016 RMP, and the authorizations issued according to that plan. Pursuant to the O&C Act, the 2016 RMP sets the annual productive capacity (or allowable sale quantity, ASQ) of the BLM's timberlands at 162 million board feet (MMbf). Geissler Decl. ¶ 7. The ASQ represents the volume of timber that "shall be sold annually" under the O&C Act. The 2016 RMP requires that the BLM harvest timber from the Harvest Land Base (HLB) in the amount proscribed by the ASQ. The Aloha Trout Project represents one of the forest management projects authorized under the 2016 RMP. *Id*. ¶ 8. The Aloha Trout Project is slated to contribute 24.0 MMbf to 75.5 MMbf of timber volume to the Salem sustained yield unit for purposes of meeting the ASQ. *Id*. The Aloha Trout Project also includes thinning in the Riparian Reserve land use allocation for purpose of improving near-and-long-term stable wood conditions. *Id*.

The O&C Act requires that timber from the O&C timberlands be harvested for "permanent forest production, and the timber thereon shall be sold, cut, and removed in conformity with the princip[le] of sustained yield for the purpose of providing a permanent source of timber supply[.]" 43 U.S.C. § 2601. Seventy-five percent of the revenue generated from the O&C timberlands go to the counties where the O&C timberlands are located. 43 U.S.C. §§ 2601, 2605; Decl. of Tim Freeman (Freeman Decl.) ¶ 2.

Proposed Intervenors have concrete interests in the BLM's management of its timberlands under the 2016 RMP that would be adversely affected if the enforcement and

application of the 2016 RMP were enjoined. Moreover, Proposed Intervenors have concrete interests in the Aloha Trout Project which would likewise be adversely affected if it were vacated or enjoined. This motion is timely, and the other parties do not adequately represent Proposed Intervenors. Therefore, this Court should grant Proposed Intervenors' motion for intervention as of right under Rule 24(a)(2). In the alternative, this Court may grant Proposed Intervenors' request for permissive intervention under Rule 24(b).

## II. INTERESTS OF INTERVENORS

### A. American Forest Resource Council.

AFRC is a regional trade association whose purpose is to advocate for sustained-yield timber harvest on public timber lands throughout the West to enhance forest health and resistance to fire, insects, and disease. Geissler Decl. ¶ 3. AFRC's members are frequent purchasers of timber sales offered by the BLM pursuant to the directives of the 2016 RMP. *Id.* ¶¶ 6, 17.

For decades, AFRC has served its membership by promoting active management to attain productive public forests, protect adjoining private forests, and assure community stability. *Id.* ¶ 3. AFRC frequently participates in the planning, environmental analysis, and decision-making processes for the BLM's projects, helping to ensure that projects adhere to the applicable resource management plans and governing federal legislation. *Id.* ¶¶ 4–5, 14. AFRC has stressed the importance of active forest management for meeting the objectives and direction of the 2016 RMP, emphasizing the direction for commercial treatment. *Id.* ¶ 14, Exs. A–B.

AFRC's legal program has frequently stood by the BLM's side in defending commercial timber harvest activities authorized under the 2016 RMP. *Id.* ¶ 12. The ASQ volume declared in the 2016 RMP—while a fraction of the production capacity of the O&C timberlands—is essential to the operation of AFRC's member businesses, their employees, and the communities

in which they operate. *Id*. Many of AFRC's members remember when the Northern Spotted Owl was listed in 1990 and the Northwest Forest Plan adopted in 1994, creating a near-moratorium on all federal timber harvest which resulted in the widespread closure of mills, manufacturing facilities, trucking companies, logging companies, and more across western Oregon. *Id*. Even under the 2016 RMP, which represents an increase in available timber volume from what was authorized under some previous resource management plans, AFRC's members still struggle to obtain sufficient volume to operate their facilities and companies, made ever-more difficult by frequent litigation over the BLM's projects, and the BLM's inability to quickly and efficiently offer sales for the volume declared in the 2016 RMP. *Id.* ¶ 13.

AFRC's members currently receive timber from numerous BLM timber sales and have an interest in many other timber sales which are in the process of being authorized. AFRC's members have interests in nearly all timber sales currently authorized under the 2016 RMP, either as timber sale purchasers, log purchasers, or manufacturers of wood products. There has been 500.8 MMbf of timber offered under the 2016 RMP over the past three fiscal years. *Id.* ¶ 17. Of that total, 433.3 MMbf was purchased by AFRC members. *Id*. AFRC has direct, and concrete, interests in protecting these sales, including the 27 MMbf sold under the Aloha Trout Project, all of which has been purchased by AFRC members to date. *Id.* ¶¶ 15–16. AFRC's members have invested significantly into their sales. *Id.* ¶ 18. Costs come in many forms, such as payment bonds, logging and road building contractors, and trucking. *Id*. These investments and the timber volume that AFRC's members expect in return stand to be lost depending on the resolution of Plaintiff's lawsuit.

AFRC's members have concrete interests in the Aloha Trout Project as well. AFRC submitted comments in support of this project. *Id.* ¶ 14, Exs. A–B. AFRC member Hull Oakes is

the purchaser of the Adipose Timber Sale authorized under the Aloha Trout Project. *Id.* ¶ 15. The Adipose Timber Sale offers an estimated volume of approximately 3.9 MMbf, consisting of regeneration harvest, scattered retention, transportation management actions, directional tree falling, post-harvest fuel reduction treatments, and post-harvest tree and vegetation planting on 56 acres of HLB lands. Declaration of Nathan Nystrom (Nystrom Decl.) ¶¶ 9, 11. AFRC member Hampton is the purchaser of the Dandi Lyon and Golden Nectar Timber Sales. Geissler Decl. ¶ 15. The Dandi Lyon Timber Sale offers an estimated volume of approximately 8.2 MMbf, and the Golden Nectar Timber Sale offers an estimated volume of approximately 11.1 MMbf. *Id*. ¶ 10. The Dandi Lyon and Golden Nectar Timber Sales both consist of regeneration harvest and thinning prescriptions. *Id*.

AFRC also has a strong interest in maintaining a healthy forest ecosystem. AFRC members consider themselves partners with the BLM, helping the agency to achieve the shared goal of improving forest health and providing a sustainable supply of timber products to support the local industry and local communities. Geissler Decl. ¶ 21. Degraded forest health and reduced vigor of the BLM's forests hampers AFRC's members' ability to acquire a sustainable timber supply in the future. *Id*. AFRC members provide a suite of benefits to the forest ecosystem, including stand density reduction, snag creation for wildlife, and hazardous fuel reduction. *Id*.

A permanent injunction or vacatur of the 2016 RMP, the management authorizations falling under the 2016 RMP, and the Aloha Trout Project would be devastating to the forest products industry of western Oregon. The remedy Plaintiff seeks would cause mass closures and layoffs in the forest products industry and would cause AFRC's members to forfeit significant investments in ongoing timber sales.

### B. Association of O&C Counties.

AOCC represents counties in western Oregon that host 2.1 million acres of the O&C timberlands. Freeman Decl. ¶ 4. AOCC was formed in 1925 as an advocate for the Oregon counties with a vested interest in how the O&C timberlands are managed. *Id*. Advocacy by AOCC resulted in legislation in 1926 and again in 1937 with passage of the O&C Act that is still the governing law guiding management of the O&C timberlands today. *Id*. Recent advocacy by AOCC also resulted in modifying the percent share of timber receipt revenues due to the O&C counties. *Id*. ¶ 5. On the O&C timberlands, Congress sought to compensate counties for the reconveyance of the lands back to the federal government. 43 U.S.C. § 2605. Originally, counties were owed 75 percent of the timber receipts generated from the O&C timberlands; 50 percent of timber receipts were immediately allocated to the counties, and an additional 25 percent of receipts were to be allocated (for a total of 75 percent) after the United States Treasury was reimbursed for charges against the Oregon and California land-grant fund. Freeman Decl. ¶ 5; 43 U.S.C. § 2605. However, in 1982, Congress limited the O&C counties to only *50 percent* of shared receipts despite the Treasury having been fully reimbursed. Freeman Decl. ¶ 5. The Fiscal Year (FY) 2026 Interior Appropriations Bill corrected this limitation. Now, thanks to AOCC's advocacy, counties are once again entitled to 75 percent of the timber receipts generated from the O&C timberlands. *Id*. AOCC has been, and remains, active in all legislation and all administrative actions regarding the management of the O&C timberlands for 100 years—a testament to the importance of these lands to the health and wellbeing of western Oregon communities. *Id*. ¶ 4.

AOCC is committed to the social and economic wellbeing of western-Oregon counties and communities, and the health and productivity of the O&C timberlands. *Id.* ¶ 6. AOCC

advocates for sustained-yield management of the O&C timberlands, as required by federal law under the O&C Act, to protect and support jobs and local economies, essential public services, and healthy resilient forests. *Id*.

AOCC remembers the hardships that resulted from the precipitous decline in timber harvest following the listing of the Northern Spotted Owl in 1990 and the adoption of the Northwest Forest Plan in 1994. Those decisions cost counties hundreds of millions of dollars in shared timber receipts. *Id*. ¶ 7. That lost revenue had a profoundly negative impact on the social fabric of the O&C counties. *Id*. ¶¶ 7, 14. The lost revenue resulted in inadequate funding for road maintenance, policing, social services, schools, infrastructure, and more. *Id*. To make up for this decline, Congress authorized payments under the Secure Rural Schools Act (SRS). *Id.* ¶ 8. Unfortunately, SRS payments do not match historic receipts from the O&C timberlands, such that it is not a suitable replacement for AOCC's members. *Id*. Moreover, SRS reauthorizations are unreliable and subject to the whim of Congress, making it an unsuitable safety net. *Id.* ¶¶ 8–9.

SRS was unauthorized for 2024 and much of 2025, until—through significant effort—Congress reauthorized SRS in December 2025. *Id*. ¶ 8. The reauthorization cemented counties' election choice for 2024 and 2025 but starting in FY 2026 counties will be free to elect to receive shared timber receipts under the O&C Act, rather than SRS payments for the O&C timberlands. It is expected that, for FY 2026 and beyond, AOCC members will choose to take the O&C Act's shared timber receipts rather than the SRS payment for the BLM lands due to the increased 75 percent allocation. *Id*. ¶ 9. SRS has not been reauthorized after FY 2026, and if it is not reauthorized then AOCC's members will be wholly reliant on shared timber receipts. *Id*. ¶ 8.

Every project which generates receipts has a significant impact on the level of funding provided to AOCC's members. *Id*. ¶ 10. Plaintiff's lawsuit seeks to enjoin every receipt-generating project. *Id*. ¶ 11. This would cause even more lost county services and would represent the final nail in the coffin for some county infrastructure, like fairgrounds. *Id*. ¶¶ 11–15.

In addition, AOCC has an interest in promoting fire-resilient forests. Catastrophic wildfires are a social justice issue affecting many western Oregon communities. *Id*. ¶ 7. Experience has proven that an inability to efficiently manage federal forests results in unsustainable fuel loading, dead and dying stands of trees, insect infestations, and, eventually, catastrophic stand-replacing wildfires that devastate the O&C timberlands, threaten homes, roads, and businesses, and degrade air quality to extremely unhealthy levels. *Id*. Beyond the broad harms which would result under Plaintiff's requested vacatur and injunction of the 2016 RMP, vacating and/or enjoining the Aloha Trout Project would cause the same impacts to AOCC, albeit on a smaller scale. *Id*. ¶ 12. Enjoining the Aloha Trout Project would mean less funding available for the O&C counties and lost economic opportunities for western Oregon's timber-dependent communities. *Id*.

## III. ARGUMENT

### A. Standards for Intervention.

A party may intervene as a matter of right when: (1) the applicant's motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that, without intervention, the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest is not adequately represented by the existing parties. Rule 24(a)(2).

Rule 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y v. U.S. Forest Serv*., 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*). Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* Moreover, an applicant's interest in litigation is sufficient for purposes of Rule 24 so long as "it will suffer a practical impairment of its interests as a result of the pending litigation." *Id*. The court accepts as true the nonconclusory allegations and evidence submitted in support of a motion to intervene. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Further, an organization may intervene on behalf of its members.[2] *Id.* at 822 n.3.

In 2011, the Ninth Circuit, sitting *en banc*, abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based solely on Rule 24 intervention factors. *Wilderness Soc'y*, 630 F.3d at 1177, 1179–81. The unanimous *en banc* panel confirmed that an asserted interest need only relate to the "property or transaction that is the subject of the action" and that it was improper to "focus[] on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit" in evaluating a motion for intervention. *Id.* at 1178 (quoting Rule 24(a)). The Ninth Circuit thus reaffirmed that Rule 24 is constructed "broadly in favor of proposed intervenors." *Id*. at 1179.

Under Rule 24(b), a court has discretion to grant permissive intervention to anyone who, upon making a timely motion, has a claim or defense that shares a common question of law or fact with the main action. In exercising its discretion, the court must consider whether

[2] An organization may intervene on behalf of its members so long as it shows "(1) members have a legally protectable interest sufficient for intervention; (2) the defense of the [decision] is germane to the associations' purposes; and (3) individual [members] are not necessary participants in the suit." *Berg*, 268 F.3d at 822 n.3. Proposed Intervenors AFRC and AOCC have made these showings here.

intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Id*. Compared with intervention as of right, a district court has broad discretion in determining whether to grant a motion for permissive intervention under Rule 24(b). *See generally Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1084, 1108–11 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1173. Thus, unlike intervention as of right, permissive intervention does not require a protectable interest or inadequacy of representation, and "plainly dispenses with any requirement that the intervenor shall have direct personal or pecuniary interest in the subject of the litigation." *Id*. at 1108 (internal quotation marks omitted).

### B. Proposed Intervenors Have a Right to Intervene.

#### 1. The motion is timely.

Proposed Intervenors meet the standards for intervention of right. First, the motion is timely. In determining whether a motion is timely, three factors are weighed: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay. *Orange Cty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986). Plaintiff filed their Amended Complaint less than four weeks ago, on August 24, 2026. ECF No. 12. Federal Defendants have not filed an answer or responsive pleading. The case is still in its earliest stages.

Intervention at this stage of the case would not prejudice the existing parties because no party has engaged in any substantive proceedings at this time. Courts have held that intervening before merits briefing or a ruling on the merits is timely. *See, e.g.*, *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (holding that the motion for intervention was timely when it was filed shortly after the complaint); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)) (holding a motion to intervene was timely when filed "before any hearings or rulings on substantive matters"); *WildEarth Guardians v. Hoover*, No. 1:16-CV-65-

M-DWM, 2016 WL 7388316, at *1 (D. Mont. Dec. 20, 2016) (finding that the parties would not be prejudiced by intervention because the proposed intervenor was able to follow a briefing schedule already in place). In addition, while Proposed Intervenors are submitting a motion to dismiss along with this motion, Plaintiff will not be prejudiced because Proposed Intervenors are submitting their motion to dismiss on the same schedule as Federal Defendants and have agreed to work with the parties on a schedule for the response deadline. Thus, Proposed Intervenors' motion is timely.

**2. Proposed Intervenors have interests that are related to the subject of the action.**

Second, Proposed Intervenors have interests that are related to the property or transaction that is subject to the action, which are interests that are "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The significantly protectable interest requirement is a "practical, threshold inquiry" used to "dispos[e] of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks and citations omitted). There is no "clear-cut [test] or bright-line rule" for determining whether a movant has such an interest. *Id*. That said, a movant must establish that their interest "is protectable under some law" and "there is a relationship between the legally protected interests and the claims at issue." *Wilderness Soc'y*, 630 F.3d at 1180 (internal quotation marks omitted).

Plaintiff seeks a permanent injunction of all present and future timber sale (and other) authorizations issued under the 2016 RMP, including but not limited to the Aloha Trout Project. Both AFRC and AOCC have economic interests in the BLM's authorization of timber sales under the 2016 RMP, including the Aloha Trout Project. AFRC's members have invested significantly into ongoing timber sales that would be enjoined under the relief Plaintiff is

seeking. Geissler Decl. ¶¶ 15–18; Nystrom Decl. ¶ 10. AFRC's members also require locally sourced timber from the BLM's timberlands to continue operations. Geissler Decl. ¶ 6. In addition to these broad-sweeping interests in the numerous timber sales presently authorized by the BLM, AFRC's member Hull Oakes is the purchaser of the Adipose Timber Sale. Nystrom Decl. ¶ 9. Hull Oakes has invested hundreds of thousands of dollars in this sale, which is needed to provide timber to Hull Oakes' family-owned mill in the small town of Monroe, Oregon. *Id*. ¶¶ 8–12. An injunction of the Aloha Trout Project would cause Hull Oakes to lose its investment and concrete interest in the Adipose Timber Sale. Hampton is the purchaser of the Dandi Lyon and Golden Nectar Timber Sales. Geissler Decl. ¶¶ 9–10. An injunction would cause Hampton to lose its investment and concrete interest in the Dandi Lyon and Golden Nectar Timber Sales.

AFRC members and AOCC member counties also have an interest in a reliable supply of timber for local sawmills and downstream production of forest products, as well as the much needed high-wage jobs these industries support. Geissler Decl. ¶¶ 19–20; Freeman Decl. ¶¶ 16–18. The lack of reliable timber supply has been cited as a leading reason for multiple mill closures in Oregon since 2024. Freeman Decl. ¶ 17. Many of these mill closures have come from AFRC's members. AFRC and AOCC have a direct interest in ensuring that more mills do not close their doors in the near future, and the sustainable harvest of federal timber is crucial to keeping mills operational.

Moreover, AOCC's members have a direct financial interest in the timber receipts generated from the BLM's timber sales authorized under the 2016 RMP. Since timber receipts declined precipitously in the 1990s AOCC's members have often elected to receive SRS funds in lieu of shared timber receipts. Freeman Decl. ¶ 8. However, SRS funds have repeatedly decreased and have been subject to inconsistent and delayed reauthorization. *Id*. Thus, AOCC's

member counties may (indeed, are expected to) become wholly reliant on shared receipts from timber harvest on the O&C timberlands to fund essential county services, especially considering that the share of timber receipts owed to the O&C counties has been increased to 75 percent and SRS funding is not authorized beyond 2026. *Id.* ¶¶ 8–10. Consequently, every timber harvest on the O&C timberlands has a direct impact on the receipts available for AOCC's members. *Id.* ¶ 10. If any, much less *all* timber sales are enjoined or vacated, AOCC's members will receive depleted *or no* timber receipts. *Id.* The result would be devastating to the funding of western Oregon's rural counties.

Timber companies and loggers "have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) (reversing denial of motion to intervene by timber companies and groups in environmental litigation). Therefore, companies that use public timber have "a broader interest in any litigation that might impede [their] ability to obtain timber from federal lands in the future." *Ctr. For Biological Diversity v. Gould*, Case No. 1:15-cv-01329-WBS-GSA, 2015 WL 6951295, at *2 (E.D. Cal. Nov. 10, 2015); *cf. N. Cascades Conservation Council v. U.S. Forest Serv.*, No. 2:20-CV-01321-RAJ-BAT, 2021 WL 871421, at *3 (W.D. Wash. Mar. 9, 2021). Accordingly, Proposed Intervenors have protectable interests that support intervention as of right in this case. *See Wilderness Soc'y*, 630 F.3d at 1180.

**3. Proposed Intervenors would be substantially affected by the disposition of this action.**

"If an absentee would be substantially affected in a practical sense by the determination made in an action, [they] should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822. The third factor of Rule 24(a)(2) often follows as a matter of course if the second factor is met. *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)

("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *Native Ecosystem Council v. Marten*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (D. Mont. May 24, 2018) ("On a broader scale, if Plaintiffs are successful in challenging the Farm Bill categorical exclusion, it will also affect future contracts and employment for members of the logging associations.").

Here, Plaintiff's requested relief would have legal and practical effects on the interests of Proposed Intervenors. Plaintiff's requested remedy would impair AFRC's and AOCC's interests in an economically feasible and accessible timber supply now and in the future. Geissler Decl. ¶¶ 15–21; Freeman Decl. ¶¶ 14–18. This would endanger the livelihood of AFRC's members, and the economic and socioeconomic health of timber-dependent O&C counties. Geissler Decl. ¶¶ 15–21; Freeman Decl. ¶¶ 14–18. Plaintiff's requested relief would, quite literally, take money out of the budgets of AOCC's member counties, and deprive AFRC's members of a reliable source of timber. Geissler Decl. ¶¶ 15–21; Freeman Decl. ¶¶ 14–18. AFRC and AOCC stand to be substantially affected by the disposition of this action.

**4. Proposed Intervenors are not adequately represented by the existing parties.**

Finally, Proposed Intervenors would not be adequately represented by government counsel in this case. An "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council v. U.S. Forest Serv*., 66 F.3d 1489, 1498 (9th Cir. 1995), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011). This prong is satisfied where a movant's interests are "potentially more narrow than the public's at large" and where government representation of those interests "*may have been* inadequate." *Allied Concrete & Supply Co. v.*

*Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998)). *Allied* reversed a district court's denial of intervention; *Mendonca* affirmed a grant of intervention to a similar group, holding this factor was satisfied because the movant's interests were "potentially more narrow and parochial than the interests of the public at large." *Mendonca*, 152 F.3d at 1190.

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998). The most important factor in assessing the adequacy of representation is "how the interest compares with the interests of the existing parties." *Citizens of Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

Proposed Intervenors' interests are narrower in scope than that of the BLM. Geissler Decl. ¶¶ 22–24; Freeman Decl. ¶¶ 19–20. AFRC members and AOCC counties have direct economic interests at stake that the BLM does not share. Geissler Decl. ¶¶ 22–24; Freeman Decl. ¶¶ 19–20. Thus, the BLM has broader public interests that are not a direct reflection of Proposed Intervenors' interests. *See Forest Conservation Council*, 66 F.3d at 1499 (holding that a federal agency "is required to represent a broader view than the more narrow, parochial interest of [proposed intervenors] the state of Arizona and Apache County."); *Mont. Elders for a Livable Tomorrow v. U.S. Office of Surface Mining*, No. CV 15-106-M-DWM, 2015 WL 12748263, at *1 (D. Mont. Dec. 11, 2015) (finding this factor satisfied where movant had "a personal interest that does not belong to the general public and because Plaintiffs and Defendants are representing the

public interest"); *Native Ecosystem Council*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (noting that while both the Forest Service and Proposed Defendant–Intervenors seek to defend the regulatory process that was followed in this case, their ultimate goals are different).

As recognized in *Berg*, a federal agency cannot be expected to protect the community-level and economic interests of Proposed Intervenors. *Berg*, 268 F.3d at 823 (holding that the interests of private associations were not adequately represented by federal and municipal defendants in an Endangered Species Act challenge to the City of San Diego's comprehensive land management plan); *see generally Capitol Indem. Corp. v. Reflections Acad., Inc.*, No. CV 21-57-DLC, 2021 WL 5329936, at *1 (D. Mont. Nov. 16, 2021) (finding that "any burden resulting from delay is outweighed by the interest in resolving this case on a complete factual record"). Thus, inadequate representation exists here where the broader interests of the BLM do not align with Proposed Intervenors' economic, social, and ecological (forest health) interests. *See* Geissler Decl. ¶ 23 (examples of cases where AFRC successfully intervened in challenges to agency actions); Freeman Decl. ¶ 19 (explaining how the BLM has historically not represented AOCC's interests).

The inadequacy of the BLM's representation is further evidenced by the history of the federal government's application of the Congressional Review Act. Plaintiff's complaint alleges that Federal Defendants have taken the position that RMPs are "rules" under the Congressional Review Act. ECF No. 12 ¶¶ 47–54. Federal Defendants' interpretation of the Congressional Review Act may run counter to Proposed Intervenors' interests and, therefore, Proposed Intervenors may offer different arguments than the ones offered by Federal Defendants. Therefore, based on the pleadings, Federal Defendants may be unlikely to represent Proposed

Intervenors' position on the merits of this case. Accordingly, Federal Defendants do not adequately represent Proposed Intervenors' interests.

Even further, here Plaintiff seeks equitable relief in the form of an injunction. Injunctions are never awarded as of right, and to obtain relief Plaintiff must meet a four-factor test:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1184 (9th Cir. 2011) (citations omitted). Federal Defendants would be unable to adequately represent the public interest were the Court to reach this four-factor test. As explained above, AFRC and AOCC would be injured to the tune of millions of dollars were Plaintiff to obtain the relief it seeks in this case. Freeman Decl. ¶ 11. AFRC and AOCC represent the public interest—AFRC's members employ thousands of people whose jobs are tied to the availability of timber in western Oregon. Geissler Decl. 19. AOCC represents counties whose budgets are dependent on the BLM's timber receipts. Freeman Decl. ¶ 4. The loss of federal timber harvest would tear at the social fabric of rural western Oregon in a manner that the BLM is incapable of representing, but which AFRC and AOCC are well equipped to address. Both AFRC and AOCC's members lived through the years following the 1990 listing of the Northern Spotted Owl and the adoption of the Northwest Forest Plan in 1994 and can speak to how those decisions devastated the public.

For the abovementioned reasons, Proposed Intervenors meet the requirements for intervention as of right under Rule 24(a).

### C. Alternatively, the Court May Grant Permissive Intervention.

Given their clear interests in this case, Proposed Intervenors believe they meet the

standard for intervention as of right under Rule 24(a) and that permissive intervention is unnecessary here. Nevertheless, out of an abundance of caution, Proposed Intervenors alternatively move for permissive intervention under Rule 24(b).

District courts have broad discretion to grant permissive intervention. Rule 24(b). So long as an applicant's motion is timely and its "claim or defense and the main action have a question of law or fact in common," a court may grant permissive intervention. As timeliness is established, the sole issue for the court to consider is whether the proposed intervenor "asserts a claim or defense in common with the main action." *Kootenai Tribe*, 313 F.3d at 1110. In *Kootenai*, environmental groups were allowed to intervene under Rule 24(b) where they asserted "defenses of the Roadless Rule directly responsive to the claim for injunction," along with "an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule . . . ." *Id*. at 1110–11. Similarly, the Ninth Circuit recently found that AFRC and other resource industry associations were improperly denied permissive intervention to defend a Fish and Wildlife Service rule delisting the gray wolf given their unique interests and expertise on the issue. *See Defenders of Wildlife v. U.S. Fish & Wildlife Serv.*, 2022 WL 3656444 (9th Cir. Aug. 24, 2022) (finding the district court failed to consider their unique interest and expertise, and that the current parties would not undoubtedly make all the same arguments as proposed intervenors).

Proposed Intervenors seek to participate to defend the 2016 RMP and the commercial authorizations issued under the 2016 RMP. Proposed Intervenors assert defenses against the main action, which share common questions of law and fact. This Court would benefit from hearing from Proposed Intervenors about the legal issues and repercussions of a permanent injunction and partial vacatur because their members and counties will be the ones who will suffer the most

from the loss of timber sales. Proposed Intervenors have an interest in the BLM's ability to conduct treatments in the HLB, LSR, and RR, in accordance with the 2016 RMP, in a timely and economic manner.

This Court should grant permissive intervention even if it denies intervention as of right.

## IV. CONCLUSION

For the forgoing reasons, the American Forest Resource Council and Association of O&C Counties respectfully request that the Court grant their motion to intervene.

Dated this 18th day of September, 2026.

/s/ Dominic M. Carollo
DOMINIC M. CAROLLO, OSB #093057
NOLAN G. SMITH, OSB #215034
AUDREY F. BOYER, OSB#106560
Carollo Law Group
Mail: P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
Telephone: (541) 957-5900
Fax: (541) 957-5923
Email: dcarollo@carollolegal.com
Email: nsmith@carollolegal.com
Email: aboyer@carollolegal.com

SARA GHAFOURI, OSB #111021
GREG HIBBARD, OSB #183602
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
Email: sghafouri@amforest.org
Email: ghibbard@amforest.org
*Attorneys for Proposed Defendant-Intervenors*

**CERTIFICATE OF SERVICE**

I, Dominic Carollo, hereby certify that on September 18, 2026, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 18th day of September, 2026.

/s/ Dominic M. Carollo