ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

LUTHER L. HAJEK, CO Bar No. 44303
U.S. Department of Justice
Energy and Natural Resources Division
Natural Resources Section
999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Tel: (303) 241-0826; Fax: (303) 844-1350
E-mail: luke.hajek@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

**CASCADIA WILDLANDS**,

Plaintiff ,

v.

**DOUG BURGUM**, Secretary of the Interior, *et al.*,

Defendants.

Case No.: 6:26-cv-01262-AP

The Honorable Amy Potter

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

BACKGROUND ..... 2

I. The Northwestern and Coastal Oregon Resource Management Plan ..... 2

II. The Congressional Review Act ..... 3

III. Plaintiff's Complaint ..... 4

LEGAL STANDARD FOR A MOTION TO DISMISS ..... 4

ARGUMENT ..... 5

I. Plaintiff's Claim Is Barred by Section 805 of the Congressional Review Act ..... 5

A. The Plain Language of Section 805 and its Context within the APA Demonstrate that It Unambiguously Precludes Judicial Review of Allegations that an Agency Failed to Submit a Proposed Rule to Congress under the CRA ..... 6

B. The Weight of the Case Law Supports the Plain Meaning of Section 805 ..... 9

C. District Court Cases Finding that a Statutory Claim Under the CRA May Be Reviewed by a Court Are Contrary to Ninth Circuit Precedent ..... 12

II. Plaintiff's Claim Is Barred by Res Judicata ..... 15

III. Plaintiff's Claim Is Barred by Judicial Estoppel ..... 18

IV. Plaintiff's Claim Is Barred by the Statute of Limitations and Laches ..... 20

V. Plaintiff's Complaint is An Improper Programmatic Challenge ..... 23

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

## Cases

*Am. Forest Council v. United States*,
77 F.4th 787 (D.C. Cir. 2023) ..... 3

*Americana Fabrics, Inc. v. L & L Textiles, Inc.*,
754 F.2d 1524 (9th Cir. 1985) ..... 16

*Apache Survival Coal. v. United States*,
21 F.3d 895 (9th Cir. 1994) ..... 22

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ..... 14

*Baughman v. Walt Disney World Co.*,
685 F.3d 1131 (9th Cir. 2012) ..... 18, 20

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984) ..... 6, 11

*Brown v. Felsen,*
442 U.S. 127 (1979) ..... 16

*Bruesewitz v. Wyeth*,
562 U.S. 223 (2011) ..... 14

*Cascadia Wildlands v. Bureau of Land Mgmt.*,
410 F. Supp. 3d 1146 (D. Or. 2019) ..... 19

*Cascadia Wildlands v. U.S. Bureau of Land Management*,
No. 6:24-cv-1641, 2026 WL 1346855 (D. Or. May 14, 2026) ..... 19, 20

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*,
No. 6:20-cv-1395-MK, 2021 WL 5112001 (D. Or. Jan. 3, 2022) ..... 19

*Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*,
No. 6:20-cv-1395-MK, 2021 WL 5112001 (D. Or. Sept. 13, 2021) ..... 19

*Center for Biological Diversity v. Bernhardt*,
946 F.3d 553 (9th Cir. 2019) ..... 10, 11, 13

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ..... 13

*Conn. Nat'l Bank v. Germain,*
503 U.S. 249 (1992) ..... 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*,
603 U.S. 799 (2024) ..... 20, 21

*Danjaq LLC v. Sony Corp.*,
263 F. 3d 942 (9th Cir. 2001) ... 22

*Desert Place, Inc. v. Costa*,
539 U.S. 90 (2003) ... 13

*E.E.O.C. v. Luce, Forward, Hamilton & Scripps*,
345 F.3d 742 (9th Cir. 2003) ... 13

*Forsyth Mem'l Hosp. v. Sebelius*,
667 F. Supp. 2d 143 (D.D.C. 2009) ... 12

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ... 8

*Friends of the Earth v. Sanderson Farms, Inc.*,
992 F.3d 939 (9th Cir. 2021) ... 5

*Grand Canyon Trust v. Tucson Elec. Power Co.*,
391 F.3d 979 (9th Cir. 2004) ... 22

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ... 18

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946) ... 21

*In re Beaty*,
306 F.3d 914 (9th Cir. 2002) ... 22

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) ... 21

*Kansas Nat. Res. Coal. v. U.S. Dept. of the Interior*,
971 F.3d 1222 (10th Cir. 2020) ... 9, 10, 14

*King v. Burwell*,
576 U.S. 473 (2015) ... 8

*Klamath-Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,
No. 1:19-cv-1810-CL, 2021 WL 5356969 (D. Or. Aug. 24, 2021) ... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ... 5

*Lane v. Pena*,
518 U.S. 187 (1996) ... 5

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ... 4, 5

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ... 15

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)........................................ 23, 24

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988)........................................ 5

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)........................................ 8

*Montana v. United States*,
440 U.S. 147 (1979)........................................ 15

*Montanans for Multiple Use v. Barbouletos*,
542 F. Supp. 2d 9 (D.D.C. 2008)........................................ 10

*Montanans for Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009)........................................10, 11

*Mullin v. Doe*,
146 S. Ct. 2121 (2026)........................................ 7, 15

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 664 (2007)........................................ 9

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018)........................................ 6, 14

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........................................ 18

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)........................................ 2, 23

*Owen v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001)........................................ 16, 17

*Pacific Rivers v. Bureau of Land Mgmt.*,
815 Fed. Appx. 107 (9th Cir. 2020)........................................ 3, 17, 22

*Pacific Rivers v. U.S. Bureau of Land Mgmt.*,
No. 6:16-cv-01598-JR, 2018 WL 6735090 (D. Or. Oct. 12, 2018)........................ 3, 17, 21, 22

*Pacific Rivers v. U.S. Bureau of Land Mgmt.*,
No. 6:16-cv-01598-JR, 2019 WL 1232835 (D. Or. Mar. 15, 2019)........................ 3

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
587 U.S. 601 (2019)........................................ 8

*Ratzlaf v. United States*,
510 U.S. 135 (1994)........................................ 13

*Robi v. Five Platters, Inc.*,
838 F.2d 318 (9th Cir. 1988)........................................ 16

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) ........ 6

*Rubin v. United States*,
449 U.S. 424 (1981) ........ 9

*Russell v. Rolfs,*
893 F.2d 1033 (9th Cir. 1990) ........ 18

*S. Pac. R.R. Co. v. United States*,
168 U.S. 1 (1897) ........ 16

*Save the Peaks Coal. v. U.S. Forest Serv.*,
669 F.3d 1025 (9th Cir. 2012) ........ 22

*Segal v. Am. Tel. & Tel. Co.,*
606 F.2d 842 (9th Cir. 1979) ........ 16

*Sheldon v. Sill*,
49 U.S. (8 How.) 441 (1850) ........ 5

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,*
322 F.3d 1064 (9th Cir. 2003) ........ 16

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ........ 16

*Teche Vermillion Sugar Cane Growers Ass'n v. Su*,
749 F. Supp. 3d 697 (W.D. La. 2024) ........ 12

*Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*,
No. A 97 CA 421 SS, 1998 WL 842181 n.15 (W.D. Tex. June 25, 1998) ........ 7, 12

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
594 F.2d 730 (9th Cir. 1979) ........ 5

*Tucson Airport Auth. v. Gen. Dynamics Corp.,*
136 F.3d 641 (9th Cir. 1998) ........ 6

*Tugaw Ranches LLC v. U.S. Department of the Interior*,
362 F. Supp. 3d 879 (D. Idaho 2019) ........ 12, 13, 15

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc. Ltd.*,
484 U.S. 365 (1988) ........ 8

*United State ex rel. Barajas v. Northrop Corp.*,
147 F.3d 905 (9th Cir. 1998) ........ 16

*United State v. S. Ind. Gas and Elec. Co.*,
No. IP99-1692-C-M/S, 2002 WL 31427523 (S.D. Ind. Oct. 24, 2002) ........ 12

*United States v. Carlson*,
No. 12-305, 2013 WL 5125434 (D. Minn. Sept. 12, 2013) ........ 12

*Veterans for Common Sense v. Shinseki*,
678 F.3d 1013 (9th Cir. 2012) ........ 5

*Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*,
509 F.3d 1259 (10th Cir. 2007) ........ 10, 11

*Wash All. of Tech. Workers v. U.S. Dept. of Homeland Security*,
892 F.3d 332 (D.C. Cir. 2018) ........ 10

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas,*
5 F.4th 997 (9th Cir. 2021) ........ 23

**Statutes**

28 U.S.C. § 2401 ........ 20

43 U.S.C. § 1712(a) ........ 2

43 U.S.C. § 1732(a) ........ 2

5 U.S.C. § 551 ........ 8

5 U.S.C. § 701(a)(1) ........ 6

5 U.S.C. § 702 ........ 5

5 U.S.C. § 704 ........ 23

5 U.S.C. § 801(a) ........ 11

5 U.S.C. § 801(a)(1)(A) ........ 10

5 U.S.C. § 801(a)(1)(A)(i)-(iii) ........ 3

5 U.S.C. § 801(b)(1) ........ 3

5 U.S.C. § 801(b)(2) ........ 4

5 U.S.C. § 802 ........ 3

5 U.S.C. § 804 ........ 8

5 U.S.C. § 805 ........ passim

5 U.S.C. §§ 801-808 ........ 3

8 U.S.C. § 1254a(b)(5)(A) ........ 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ........ 4

**Regulations**

43 C.F.R. § 1610.5-3(a) (2003) ........ 2

**Other Authorities**

142 Cong. Rec. E571 .......... 19

142 Cong. Rec. S3683 (daily ed. Apr. 18, 1996) .......... 19, 20

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff's First Amended Complaint for Declaratory and Injunctive Relief ("Am. Compl."), Dkt. No. 12, must be dismissed for lack of jurisdiction. Plaintiff Cascadia Wildlands challenges the Aloha Trout Forest Management Project, claiming that the approval of the project was invalid because it was not issued in accordance with a validly issued resource management plan ("RMP"). *See* Am. Compl. ¶¶ 1-15. Plaintiff brings a sole claim for relief, alleging that the U.S. Bureau of Land Management's ("BLM") RMP governing the relevant area is invalid because, in promulgating the RMP, BLM did not follow the relevant procedures under the Congressional Review Act ("CRA"). *Id.* ¶¶ 71-83. The Court lacks jurisdiction over Plaintiff's claim for the reasons set forth in the accompanying Memorandum in Support. Pursuant to Local Civil Rule 7-1, the undersigned counsel has conferred in good faith with Plaintiff's counsel regarding this motion, and Plaintiff opposes it.

## MEMORANDUM IN SUPPORT

## INTRODUCTION

In 2016, BLM issued the Northwest and Coastal Oregon Resource Management Plan ("NW&CO RMP" or "the Plan"), which governs BLM's management of public land in western Oregon. Plaintiff Cascadia Wildlands alleges that BLM failed to report the NW&CO RMP as a "rule" to Congress under the CRA and therefore the NW&CO RMP is not in effect and all BLM actions taken to implement the Plan over the past decade are invalid. Plaintiff's claim is barred for multiple reasons. First, the CRA precludes judicial review of the claim. Second, Plaintiff's claim is barred by res judicata because Cascadia Wildlands already challenged the NW&CO RMP, and those claims were conclusively resolved by the Ninth Circuit in 2020. Third, the

claim is barred by judicial estoppel because Cascadia Wildlands has successfully litigated claims against BLM alleging that BLM violated the law because it authorized actions that did not conform to the NW&CO RMP, which it now claims never went into effect. Fourth, Plaintiff's claim is barred by the statute of limitations and laches. Finally, because Cascadia Wildlands seeks to invalidate every action that BLM has taken pursuant to the NW&CO RMP over the past decade, Plaintiff's case is an improper programmatic challenge. Plaintiff's Amended Complaint must therefore be dismissed.

## BACKGROUND

### I. The Northwestern and Coastal Oregon Resource Management Plan

BLM manages the land under its jurisdiction through a staged process of land use planning and subsequent implementation decisions. The first step is the development of land use plans, which set goals and objectives for the management of particular areas. *See* 43 U.S.C. § 1712(a); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 71 (2004). Once adopted, BLM's subsequent authorizations of activities by third parties and its own actions must conform to the management direction set forth in the land use plan. 43 U.S.C. § 1732(a); *see also* 43 C.F.R. § 1610.5-3(a) (2003). In August 2016, after a public planning process and analysis under the National Environmental Policy Act ("NEPA"), BLM approved the NW&CO RMP. Am. Compl. ¶ 56. The Plan governs 1.3 million acres of public land in Northwest Oregon and along the Oregon coast. *Id.* ¶ 58.[1]

Following the approval of the Plan, the NW&CO RMP was the subject of extensive court proceedings. Several environmental groups, including Cascadia Wildlands, challenged the Plan

---

[1] The Plan is available at: https://www.govinfo.gov/content/pkg/GOVPUB-I53-PURL-gpo82073/pdf/GOVPUB-I53-PURL-gpo82073.pdf (last visited July 24, 2026).

in the District of Oregon, alleging violations of NEPA, the Endangered Species Act ("ESA"), and the Oregon and California Lands Act ("O&C Act"). *See generally Pacific Rivers v. U.S. Bureau of Land Mgmt.*, No. 6:16-cv-01598-JR, 2018 WL 6735090 (D. Or. Oct. 12, 2018). They did not raise a claim under the CRA. The magistrate judge issued findings and recommendations granting summary judgment in favor of the federal defendants, *id.* at *18, and the district court adopted those recommendations. *Pacific Rivers v. U.S. Bureau of Land Mgmt.*, No. 6:16-cv-01598-JR, 2019 WL 1232835, at *1 (D. Or. Mar. 15, 2019). The Ninth Circuit upheld the district court's ruling. *See Pacific Rivers v. Bureau of Land Mgmt.*, 815 Fed. Appx. 107 (9th Cir. 2020). Separate lawsuits brought by timber operators and trade groups in the District of Columbia were also unsuccessful. *See generally Am. Forest Council v. United States*, 77 F.4th 787 (D.C. Cir. 2023).

**II. The Congressional Review Act**

The 1996 CRA, 5 U.S.C. §§ 801-808, adds a new chapter to the Administrative Procedure Act ("APA") that establishes a set of procedures by which Congress may review and overturn agency rules. The CRA provides that before a rule can take effect, an agency must submit a report to both houses of Congress and the Comptroller General containing a copy of the rule, a concise general statement relating to the rule, and the proposed effective date of the rule. *Id.* § 801(a)(1)(A)(i)-(iii).

Upon receipt of such a report, Congress has a specified period of time to enact a joint resolution disapproving the rule. *See id.* § 802. If both Houses of Congress adopt a joint resolution of disapproval, the resolution proceeds to the President for signature or veto. If the resolution is signed by the President (or if the President's veto is overridden by Congress) then the rule "shall not take effect (or continue)." *Id.* § 801(b)(1). Moreover, the agency may not reissue the rule or issue a new rule "that is substantially the same" unless specifically authorized

by a law enacted after the resolution disapproving the original rule. *Id.* § 801(b)(2). Of particular relevance here, the CRA broadly provides that "[n]o determination, finding, action, or *omission* under this chapter shall be subject to judicial review." *Id.* § 805 (emphasis added).

**III. Plaintiff's Complaint**

Plaintiff's Complaint ostensibly challenges BLM's approval of the Aloha Trout Forest Management Project ("Aloha Project"), Am. Compl. ¶ 3, but the allegations in the Complaint are not specific to that project. Instead, the allegations are focused on the NW&CO RMP, and Plaintiff's only claim is based on the CRA. *Id.* ¶¶ 71-83. Plaintiff claims that, because the NW&CO RMP was never submitted to Congress as a rule in accordance with the CRA, it is invalid and all authorizations that BLM has issued relying on the Plan also are invalid. *Id.* Plaintiff seeks a declaration that the authorization of the Aloha Project was unlawful and that "all permits, leases, rights of way, and other site-specific authorizations issued pursuant to the NW&CO RMP are null and void, and as a legal matter, were never issued." *Id.* at 13 (Prayer for Relief). Plaintiff also seeks injunctive relief to "postpone the effective date" of all authorizations under the NW&CO RMP and to prevent "Defendants from taking any action" regarding any "authorizations that have been issued pursuant to the NW&CO RMP." *Id.*

**LEGAL STANDARD FOR A MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(1), a complaint, or any claims therein, may be dismissed for lack of subject matter jurisdiction. An attack on the court's jurisdiction may be made either as a facial challenge, in which case the usual pleading standard applies, or as a factual challenge. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In response to a facial challenge, a plaintiff may rely on factual allegations, which the court will accept "as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* On the other hand, when considering a motion that challenges the existence of jurisdiction in fact, no presumption of truthfulness

attaches to the plaintiff's allegations. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Liete*, 749 F.3d at 1121 (citations omitted); *see also Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Liete*, 749 F.3d at 1121.

## ARGUMENT

### I. Plaintiff's Claim Is Barred by Section 805 of the Congressional Review Act

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). "'Congress may withhold from any court of its creation jurisdiction of any of the enumerated controversies.'" *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1019 (9th Cir. 2012) (en banc) (quoting *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850)). Further, jurisdiction over the United States is presumed not to exist, and waivers of the United States' sovereign immunity are strictly construed in favor of the sovereign. *Lane v. Pena,* 518 U.S. 187, 192 (1996).

Plaintiff here seeks review under the APA's waiver of sovereign immunity. *See* Am. Compl. ¶¶ 16. Although the APA "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute,' 5 U.S.C. § 702," it also "withdraws that cause of action to the extent the relevant statute 'preclude[s]

judicial review,' 5 U.S.C. § 701(a)(1)." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (citation modified); *see also Tucson Airport Auth. v. Gen. Dynamics Corp.,* 136 F.3d 641, 645-46 (9th Cir. 1998).

Here, the "relevant statute"—the CRA—unambiguously "preclude[s] judicial review" of Plaintiff's claim. 5 U.S.C. § 701(a)(1). Specifically, the CRA provides that "[n]o determination, finding, action, or *omission* under this chapter shall be subject to judicial review." *Id.* § 805 (emphasis added). By its plain terms, this broad preclusion of judicial review bars consideration of Plaintiff's claim that the Department of the Interior failed to submit the NW&CO RMP to Congress in accordance with the CRA.

### A. The Plain Language of Section 805 and its Context within the APA Demonstrate that It Unambiguously Precludes Judicial Review of Allegations that an Agency Failed to Submit a Proposed Rule to Congress under the CRA

When interpreting a statute, a court's first step is to "determine whether the language at issue has a plain and unambiguous meaning . . . ." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Where the statutory language is unambiguous, the court's inquiry is at an end. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (opining that when the plain language is "unambiguous," "our inquiry begins with the statutory text, and ends there as well" (internal quotation marks and citation omitted)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341 (citations omitted). Here, the language of section 805, its context in the APA, and the broader context of the CRA make clear that the statute unambiguously precludes judicial review of a claim that an agency failed to submit a rule to Congress under the CRA.

The language of section 805 is clear, broadly providing that "[n]o . . . omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. There is no basis in this language to limit the preclusion of judicial review to omissions *by Congress*. As noted in one of the very first interpretations of section 805, "the statute provides for no judicial review of any 'determination, finding, action, or omission *under this chapter*,' not '*by Congress under this chapter*.' The Court must follow the plain English." *Tex. Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 n.15 (W.D. Tex. June 25, 1998), *aff'd*, 201 F.3d 551 (5th Cir. 2000). Therefore, the BLM's alleged failure to submit the NW&CO RMP to Congress under the CRA, is an "omission" under the CRA within the meaning of section 805.

The Supreme Court has recently emphasized the point that, in evaluating a statutory provision that limits judicial review, courts should adhere to the plain language of the statute. *See Mullin v. Doe*, 146 S. Ct. 2121 (2026). In *Mullin*, the Court evaluated a statutory provision regarding the temporary protected status of immigrants from Syria and Haiti. *Id.* at 2127-28. A judicial review provision of the statute provides, "There is no judicial review of any determination of the [agency] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A). The Court found that the "text is clear, and its plain meaning very broad," and accordingly ruled that the statutory claims were barred. *Mullin*, 146 S. Ct. 2133-34. As in *Mullin*, the Court should look to the plain language of the statute, which leads inexorably to the conclusion that an agency's alleged failure to submit a rule to Congress is not reviewable under 5 U.S.C. § 805.

The broader context in which the judicial review provision is situated confirms this result. As the Supreme Court instructed, "the words of a statute must be read in their context and with a

view to their place in the overall statutory scheme." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 608 (2019) (citation modified); *see also King v. Burwell*, 576 U.S. 473, 492 (2015) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . .") (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 371 (1988)). Here, the context of the CRA within the broader statutory scheme of the APA confirms that an agency's alleged failure to submit a proposed rule to Congress is not reviewable.

As noted above, the CRA added a new chapter to the APA, and the limits on judicial review imposed by that statute provide context for understanding section 805. The APA, through its definition of "agency," provides that the actions or omissions of Congress are not subject to judicial review. *See* 5 U.S.C. § 551 ("For the purpose of this subchapter—(1) 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—(A) the Congress . . . ."). The CRA explicitly carries forward this exclusion of congressional actions or omissions from judicial review. *See id.* § 804 ("For purposes of this chapter—(1) The term 'Federal agency' means any agency as that term is defined in section 551(1)."). And, while the APA does not expressly refer to the President, the Supreme Court held—nearly four years prior to passage of the CRA—that actions of the President are not subject to review under the APA. *See Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992); *cf. Merck & Co. v. Reynolds*, 559 U.S. 633, 648 ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). Thus, even in the absence of section 805, actions or omissions of Congress or the President under the CRA would not be subject to judicial review. Put otherwise, the only reading of section 805 that gives it meaning is one that covers the actions or omissions of rule-issuing *agencies*, because

actions or omissions of the other two entities that play a role in the CRA—Congress and the President—are already immune from judicial review under the APA. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 664, 668-69 (2007) (opining that courts must avoid reading statutory language in a way that renders it redundant of existing provisions).

In short, the plain language of section 805 and its context within the APA and the CRA make clear that it unambiguously precludes judicial review of allegations that an agency has violated the CRA by failing to submit a proposed rule to Congress. Where the language of a statute is clear, that is the end of the judicial inquiry. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992) (internal citations omitted) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

**B. The Weight of the Case Law Supports the Plain Meaning of Section 805**

Not surprisingly, given the plain language of the statute, the vast majority of courts to have considered section 805 have concluded that it bars judicial review of allegations of agency non-compliance with the CRA through inaction. The Tenth Circuit has squarely addressed the issue of whether the alleged failure to submit a rule to Congress is judicially reviewable and concluded that it is not. *See Kansas Nat. Res. Coal. v. U.S. Dept. of the Interior*, 971 F.3d 1222, 1235 (10th Cir. 2020). The court rejected the plaintiffs' argument that the term "omission" referred only to omissions by Congress and not an agency's omitting to send a rule to Congress. *Id.* at 1235-36. As the court explained, "There is nothing in the text of the CRA to suggest that § 805 applies to only a subset of these determinations, findings, actions, and omissions, depending on the actor who performs them. Instead, the CRA unambiguously prohibits judicial review of

any omission by any of the specific actors." *Id.* at 1236; *see also Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007) ("The Congressional Review Act specifically precludes judicial review of an agency's compliance with its terms." (citing 5 U.S.C. § 805)).

The D.C. Circuit has reached the same conclusion. In *Montanans for Multiple Use v. Barbouletos*, 542 F. Supp. 2d 9, 20 (D.D.C. 2008), *aff'd*, 568 F.3d 225 (D.C. Cir. 2009), the plaintiffs alleged that the Forest Service violated the CRA by not submitting land use plan amendments to Congress. The court granted the Forest Service's motion to dismiss, ruling the bar on judicial review in section 805 "unambiguously" precludes judicial review of the Forest Service's compliance with the Act. *Id.* The court of appeals affirmed, concluding that the "language of § 805 is unequivocal and precludes review of this claim—even assuming that the plan amendments qualify as rules subject to the Act in the first place." 568 F.3d 225, 229 (D.C. Cir. 2009); *see also Wash All. of Tech. Workers v. U.S. Dept. of Homeland Security*, 892 F.3d 332, 345 (D.C. Cir. 2018) (Section 805 "denies courts the power to void rules on the basis of agency noncompliance with the Act.") (quoting *Montanans for Multiple Use*, 568 F.3d at 229).

The Ninth Circuit's most recent ruling is consistent with the proposition that the alleged failure to submit a rule to Congress under the CRA is not judicially reviewable. In *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019), conservation organizations sought to compel the Department of the Interior to reinstate a regulation that plaintiffs claimed had been unlawfully invalidated by Congress pursuant to the CRA. *See id.* at 557-59. The rule was submitted to Congress after the rule had taken effect, and therefore the plaintiffs argued that the procedures of the CRA, which require the submission of a rule to Congress "[b]efore a rule can take effect," had not been followed. *Id.* at 562 (quoting 5 U.S.C. § 801(a)(1)(A)).

Therefore, plaintiffs argued, it was unlawful for the agency to rely on Congress's rescission of the prior rule in adopting a new different rule. *Id.* at 563. The Ninth Circuit concluded that this claim was unreviewable under section 805. *Id.* at 563-64.

As the Ninth Circuit explained, the presumption in favor of judicial review is "overcome whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Id.* at 563 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)) (citation modified). The court found that Congress's intent to preclude review in the CRA was "fairly discernible." *Id.* Under section 805, courts "are deprived of jurisdiction to review any claim challenging a 'determination, finding, action, or omission' under the CRA." *Id.* (quoting 5 U.S.C. § 805). Therefore, the Ninth Circuit concluded, "we join our sister circuits which have likewise held that federal courts do not have jurisdiction over statutory claims that arise under the CRA." *Id.* (citing *Montanans for Multiple Use*, 568 F.3d at 229; *Via Christi Reg'l Med. Ctr. v. Leavitt*, 509 F.3d 1259, 1271 n.11 (10th Cir. 2007), *abrogated on other grounds by Azur v. Allina Health Servs.*, 587 U.S. 566 (2019)).

Although the precise issue presented here—whether the failure to send a rule or a land use plan to Congress is reviewable—was not at issue in *Center for Biological Diversity*, the Ninth Circuit concluded that it lacked jurisdiction over "statutory claims that arise under the CRA." *Id.* at 563. The claim that an agency failed to submit a rule or a land use plan to Congress is a statutory claim arising under the CRA and therefore is precluded by the Ninth Circuit's ruling. Moreover, the claims at issue in *Center for Biological Diversity* and those at issue in this case arise under the same section of the statute, 5 U.S.C. § 801(a). The only difference between the claims is that in *Center for Biological Diversity*, the plaintiffs alleged that the *timing* of the agency's submission to Congress was improper, and here Plaintiff's claim

focuses on *whether* the agency submitted the land use plan to Congress. The claim is encompassed by the court's ruling in *Center for Biological Diversity* and therefore is barred under Ninth Circuit case law.

Many other courts have specifically held that the alleged failure to submit a rule to Congress was not reviewable under section 805. *See Teche Vermillion Sugar Cane Growers Ass'n v. Su*, 749 F. Supp. 3d 697, 714-15 (W.D. La. 2024) (the failure to submit a Department of Labor rule to Congress was not reviewable under section 805); *United States v. Carlson*, No. 12-305, 2013 WL 5125434, at *14 (D. Minn. Sept. 12, 2013) (the Drug Enforcement Administration's failure to submit a modification of controlled substance list to Congress was not reviewable); *Forsyth Mem'l Hosp. v. Sebelius*, 667 F. Supp. 2d 143, 150 (D.D.C. 2009) (the Secretary of Health and Human Services' failure to submit a new policy to Congress was not reviewable), *aff'd*, 639 F.3d 534 (D.C. Cir. 2011); *Texas Savings & Comm. Bankers Ass'n v. Fed. Housing Fin. Bd.*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 & n.15 (W.D. Tex. June 25, 1998) (the failure to submit a policy to Congress under section 801 was not reviewable).

### C. District Court Cases Finding that a Statutory Claim Under the CRA May Be Reviewed by a Court Are Contrary to Ninth Circuit Precedent

In two cases, district courts concluded that claims alleging that an agency failed to submit a rule to Congress were reviewable, but both pre-dated more recent circuit precedent, including *Center for Biological Diversity*, concluding the opposite. The first case is *Tugaw Ranches LLC v. U.S. Department of the Interior*, 362 F. Supp. 3d 879 (D. Idaho 2019), in which the court ruled that BLM's and the Forest Service's failure to submit their land use plans to Congress was reviewable. *Id.* at 889. And the second case is an older case which found that the failure to submit a rule issued under the Clean Air Act to Congress under the CRA was reviewable. *United State v. S. Ind. Gas and Elec. Co.*, No. IP99-1692-C-M/S, 2002 WL 31427523 (S.D. Ind.

Oct. 24, 2002). Both cases were decided prior to the Ninth Circuit's opinion in *Center for Biological Diversity* and are contrary to the Ninth Circuit's ruling that statutory claims under the CRA are not reviewable. *Ctr. for Biological Diversity*, 946 F.3d at 563.

The two courts also improperly (and inaccurately) relied on legislative history to reach their conclusions. *See Tugaw Ranches*, 362 F. Supp. at 886-89; *S. Ind. Gas and Elec*, 2002 WL 31427253, at *5. Where a statute is unambiguous, courts "are precluded from considering legislative history." *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 753 (9th Cir. 2003); *see also Desert Place, Inc. v. Costa*, 539 U.S. 90, 98 (2003) ("And where, as here, the words of the statute are unambiguous, the judicial inquire is complete.") (citation modified); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.") (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994)). Because the statutory text of section 805 clearly bars statutory claims under the CRA, *Center for Biological Diversity*, 946 F.3d at 561, the legislative history should not be considered.

Moreover, the legislative history provides no useful guidance. First, the only legislative history for the CRA is a statement from the bill's sponsors added to the Congressional Record *after* passage of the Act. *See* 142 Cong. Rec. E571 (Extensions of Remarks Apr. 19, 1996) (speech of Rep. Hyde), 142 Cong. Rec. S3683 (daily ed. Apr. 18, 1996) (statement of Sens. Nickles, Reid, and Stevens). The Supreme Court has explicitly disallowed reliance on post-enactment statements:

> Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation. Real (pre-enactment) legislative history is persuasive . . . because it is thought to shed light on what legislators understood an ambiguous text to mean when they voted to enact it into law. But post-enactment legislative history by definition could have had no effect on the congressional vote.

*Bruesewitz v. Wyeth*, 562 U.S. 223 (2011) (citation modified). The Tenth Circuit has considered the legislative history and aptly pointed out that, "The legislators who voted for or against the CRA did not have that statement before them when they considered the bill." *Kansas Nat. Res. Coal.*, 971 F.3d at 1237. The Tenth Circuit concluded that, "[b]ecause the Senators' floor statement contradicts the plain language of § 805, however, it is not persuasive." *Id.* Therefore, this post-enactment statement may not be considered in interpreting the statute, particularly when it is directly contrary to the statute's plain meaning.

Second, even the post-enactment statement in the legislative history does not clearly support the notion that the failure to submit a rule to Congress is reviewable. With regard to judicial review, the statement in the Congressional Record first asserts that "Section 805 provides that a court may not review any congressional *or administrative* 'determination, finding, action, or omission under this chapter,'" suggesting the actions of administrative agencies are precluded from judicial review. 142 Cong. Rec. at S3686 (emphasis added). The statement later provides, however, that when deciding cases "properly before it," the "limitation on judicial review in no way prohibits a court from determining whether a rule is in effect. For example, the authors expect that a court might recognize that a rule has no legal effect due to the operations of subsections 801(a)(1)(A) or 801(a)(3)." *Id.* In other words, if Congress has disapproved a rule, a court may recognize that. But the language does not state that an agency's failure to submit a rule to Congress is reviewable. In any case, the post-hoc statement of the bill's sponsors is not clear and "cannot amend the clear and unambiguous language of a statute." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002); *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 634, n.9 (2018) ("Even for those of us who make use of legislative history,

ambiguous legislative history cannot trump clear statutory language. Just so here." (citation modified omitted)).

Finally, the *Tugaw Ranches* court also relied on policy reasons to conclude that a claim under the CRA was reviewable. *See* 362 F. Supp. 3d at 888-89. The court expressed concern that, without judicial review, the requirements of the CRA, including the requirement to submit rules to Congress, could go unenforced. But such policy concerns cannot supplant the plain meaning of the statute. *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 591 U.S. 657, 678 (2020). Moreover, if Congress found that its own oversight was not enough to ensure compliance with the statute, it could amend the statute. *See Mullin*, 146 S.Ct. at 2137.

In sum, Plaintiff's claim that BLM violated the CRA by failing to submit the NW&CO RMP to Congress is barred from judicial review by section 805.

## II. Plaintiff's Claim Is Barred by Res Judicata

Plaintiff's claim in this case also is barred by res judicata or, as it is sometimes referred to, claim preclusion. The sole claim in this case is that the NW&CO RMP is invalid because it was not submitted to Congress in accordance with the CRA. Am. Compl. ¶¶ 74-82. This claim is barred by res judicata because Cascadia Wildlands already challenged BLM's approval of the NW&CO RMP. And although Cascadia Wildlands could have brought this claim in that lawsuit, it did not do so. Therefore, the prior ruling upholding the NW&CO RMP is res judicata, and Cascadia Wildlands is precluded from bringing a new claim seeking to invalidate the Plan on other grounds now.

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies[.]'" *Montana v. United States*, 440 U.S. 147, 153

(1979) (quoting *S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)). To invoke res judicata one must show "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,* 322 F.3d 1064, 1077 (9th Cir. 2003) (citations omitted). "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." *Owen v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (citation modified).

Res judicata encompasses both claim preclusion and issue preclusion. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988). "Claim preclusion 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id*. at 322 (quoting *Brown v. Felsen,* 442 U.S. 127, 131 (1979)); *see also Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985). Issue preclusion "prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *Robi*, 838 F.2d at 322 (quoting *Segal v. Am. Tel. & Tel. Co.,* 606 F.2d 842, 845 (9th Cir. 1979)); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (using same terminology).

The preclusive effect of a prior court ruling is not dependent on whether claims or issues were actually litigated in the first litigation. Instead, as the Ninth Circuit has explained:

> Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.

*United State ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905 (9th Cir. 1998) (citation modified); *see also Tahoe-Sierra Preservation Council*, 322 F.3d at 1078.

All three elements of res judicata exist here. Cascadia Wildlands previously participated in a suit challenging the NW&CO RMP, and that suit was litigated to a final judgment. *See Pacific Rivers v. Bureau of Land Mgmt.*, 815 F. Appx. 107, 108-10 (9th Cir. 2020). In that case, the Ninth Circuit affirmed the district court's judgment rejecting the claims of Cascadia Wildlands and the other environmental organizations. *Id.* at 110. Therefore, the privity and final judgment prongs are met. And the identity of claims prong is also met because, when it challenged the NW&CO RMP in 2016, Cascadia Wildlands could have brought a claim alleging that BLM had failed to submit the Plan in accordance with the CRA, but it did not. The CRA claim that it brings now arises "out of the same transactional nucleus of facts"—the issuance of the NW&CO RMP—as its prior claims challenging the Plan in 2016. *Kaiser Found. Health*, 244 F.3d at 714. Therefore, its CRA claim challenging the Plan is barred.

This is not the first time that Cascadia Wildlands has attempted an end run around the Ninth Circuit's ruling upholding BLM's 2016 RMPs for western Oregon.[2] In 2019, Cascadia Wildlands and other groups challenged the North Landscape Project, and in the context of that challenge the plaintiffs also brought challenges attacking the programmatic analyses supporting the Southwestern Oregon RMP. *See Klamath-Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, No. 1:19-cv-1810-CL, 2021 WL 5356969, at *3 (D. Or. Aug. 24, 2021). As the court noted: "The validity of the 2016 RMP and its supporting documents have been challenged by all but one of the plaintiffs in this case and was upheld by this Court with a final judgment on the merits." *Id.* Further, the court concluded, "this Court will not consider attacks on the programmatic analyses supporting the 2016 RMP and its land use allocation framework." *Id.*

[2] In 2016, BLM issued two separate records of decision approving the NW&CO RMP and the Southwestern Oregon RMP. BLM conducted one NEPA process for both RMPs, and both were challenged in *Pacific Rivers*. *See Pacific Rivers*, 2018 WL 6735090, at *2.

The same rationale applies here—Plaintiff's CRA claim challenging the NW&CO RMP is barred by res judicata. The Court could consider claims specifically challenging the approval of the Aloha Project on grounds unrelated to the validity or effectiveness of the NW&CO RMP, but Plaintiff has brought no such claims.

**III. Plaintiff's Claim Is Barred by Judicial Estoppel**

Judicial estoppel also bars Cascadia Wildlands from asserting a claim that the NW&CO RMP is invalid or not in effect because BLM allegedly failed to report it under the CRA. In prior litigation, Cascadia Wildlands has pursued claims against BLM, seeking to enforce provisions of the NW&CO RMP as to particular projects. In some of those cases, Cascadia Wildlands prevailed and obtained a final judgment that BLM failed to comply with the terms of the NW&CO RMP. Cascadia Wildlands may not now turn around and argue that the NW&CO RMP was never in effect to begin with.

Under the doctrine of judicial estoppel, a litigant cannot successfully assert a position in a legal proceeding and then pursue an inconsistent position in a subsequent proceeding. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel is an "equitable doctrine" that a court may invoke "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also . . . to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)). It typically includes three factors: (1) whether "the party's later position [is] 'clearly inconsistent with its earlier position[;]'" (2) whether "the party succeed[ed] in persuading a court to accept its earlier position[;]" and (3) whether "the party seeking to assert an inconsistent position [will] 'derive an unfair advantage or impose an unfair detriment on the opposing party[.]'" *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51).

Judicial estoppel applies here because Cascadia Wildlands has relied on the NW&CO RMP to argue successfully that BLM has violated FLPMA multiple times in the past. First, Cascadia Wildlands challenged BLM's approval of the Pedal Power timber sale in February 2019. *Cascadia Wildlands v. Bureau of Land Mgmt.*, 410 F. Supp. 3d 1146, 1152 (D. Or. 2019). Cascadia Wildlands argued, among other things, that BLM's approval of the sale violated FLPMA because BLM's approval of the sale was not consistent with the recreation management framework adopted within the NW&CO RMP. *Id.* at 1151, 1155-56. The court ruled in favor of Cascadia Wildlands on that claim, *id.* at 1156, and there was no appeal.

Cascadia Wildlands obtained another favorable ruling against BLM based on the NW&CO RMP in 2021. *Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, No. 6:20-cv-1395-MK, 2021 WL 5112001, at *5 (D. Or. Sept. 13, 2021). Following the court's initial ruling regarding the Pedal Power timber sale, BLM prepared a supplemental EA and issued a new decision approving the sale. *Id.* at *3. Cascadia Wildlands challenged the new decision and argued, among other things, that BLM had violated FLPMA because its new decision also was not consistent with the recreation management framework within the NW&CO RMP. *Id.* at *5. The district court adopted the magistrate judge's finding, *Cascadia Wildlands v. U.S. Bureau of Land Mgmt.*, No. 6:20-cv-1395, 2021 WL 5112001 (D. Or. Jan. 3, 2022), and there was no appeal.

In a more recent case that is not yet final, Cascadia Wildlands has continued to assert claims based on the NW&CO RMP. *See Cascadia Wildlands v. U.S. Bureau of Land Management*, No. 6:24-cv-1641, 2026 WL 1346855, at *9-12 (D. Or. May 14, 2026). In that case, Judge Kasubhai ruled that BLM violated FLPMA by failing to comply with the direction in

the NW&CO RMP to maintain trees established in 1850 or earlier and greater than or equal to 40 inches in diameter. *Id.*

In other words, Cascadia Wildlands has argued in multiple cases that BLM has taken action that was not consistent with the NW&CO RMP, and in some cases, it obtained a final ruling that BLM violated the Plan. Cascadia Wildlands cannot have it both ways—either the NW&CO RMP is valid and guides BLM's management of the public lands in northwestern Oregon, or it is not. All of the elements of judicial estoppel are met: (1) Cascadia Wildlands current position that the NW&CO RMP is not in effect is clearly inconsistent with its early position that BLM was required to abide by the Plan; (2) Cascadia Wildlands was successful in its arguments that BLM was required to abide by the Plan; and (3) allowing Cascadia Wildlands to take inconsistent positions would be to the detriment of BLM and third parties who have relied on the NW&CO RMP for the past decade. *See Baughman*, 685 F.3d at 1133. Therefore, Cascadia Wildlands is barred by judicial estoppel from asserting that the NW&CO RMP is invalid.

## IV. Plaintiff's Claim Is Barred by the Statute of Limitations and Laches

Plaintiff's claim alleging that BLM failed to submit the Plan to Congress in accordance with the CRA ten years ago is brought too late and is therefore barred by the statute of limitations.[3] Claims challenging agency action under the APA must be "filed within six years after the right of action first accrues." 28 U.S.C. § 2401. "A claim accrues when the plaintiff has the right to assert it in court—and in the case of the APA, that is when the plaintiff is injured by final agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*, 603 U.S. 799, 804 (2024). In *Corner Post*, the Supreme Court ruled that a plaintiff could bring suit within six years

[3] Plaintiffs also seek to invalidate BLM actions implementing the NW&CO RMP that took place more than six years ago. Any such claims also are barred by the statute of limitations and laches.

of when it had first been injured by the challenged rule, even if more than six years had elapsed since the promulgation of the rule. *Id.* at 807-09. "An APA plaintiff does not have a complete and present cause of action until she suffers an injury from final agency action, so the statute of limitations does not begin to run until she is injured." *Id.* at 809.

Here, more than six years has elapsed since Cascadia Wildlands was injured by BLM's alleged failure to comply with the CRA. BLM promulgated the NW&CO RMP in 2016, and Cascadia Wildlands brought suit against the Plan soon thereafter alleging violations of NEPA, the ESA, and the O&C Lands Act. *Pacific Rivers*, 2018 WL 6735090. Thus, Cascadia Wildlands successfully asserted injuries that allowed it to pursue its claims challenging the Plan in 2016. The alleged CRA violation occurred before the NW&CO RMP went into effect and before Cascadia Wildlands brought suit challenging it. Therefore, there is no basis for Cascadia Wildlands to claim that its injury from the alleged CRA violation did not occur until later. Because Cascadia Wildland's claim challenging the NW&CO RMP based on the failure to report the Plan under the CRA accrued more than six years ago, it is time-barred.

Plaintiff's claim is also barred by the doctrine of laches. "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (citation modified). "[L]aches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced . . ." *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) (citation modified). Laches bars a claim when there is a showing that the defending party suffered prejudice on account of a claimant's unreasonable delay. "To demonstrate laches, a party must establish (1) lack of diligence by the

party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Apache Survival Coal. v. United States*, 21 F.3d 895, 905 (9th Cir. 1994) (citation modified).

Here, both factors apply. First, Cascadia Wildlands did not exercise reasonable diligence in bringing its claim. In considering whether a plaintiff acted diligently, the court may consider various factors, including "the length of the delay before the plaintiff filed suit and the circumstances surrounding that delay." *Save the Peaks Coal. v. U.S. Forest Serv.* 669 F.3d 1025, 1031 (9th Cir. 2012) (quoting *In re Beaty*, 306 F.3d 914, 927 (9th Cir. 2002) (citation modified)). Cascadia Wildlands unreasonably delayed bringing its CRA claim against BLM. The NW&CO RMP was issued over ten years ago, and Cascadia Wildlands could have brought a CRA claim when it initially challenged the Plan in 2016. *See Pacific Rivers*, 2018 WL 6735090, at *2. Cascadia Wildlands' failure to bring a CRA claim when it first challenged the Plan (or in the intervening ten years) demonstrates a lack of diligence in bringing the claim.

Second, BLM is prejudiced by Cascadia Wildlands' failure to bring the claim sooner. "A defendant may . . . demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 988 (9th Cir. 2004) (quoting *Danjaq LLC v. Sony Corp.*, 263 F. 3d 942, 955 (9th Cir. 2001)). BLM would be prejudiced by the Court entertaining Plaintiff's CRA claim now because during the intervening ten years since BLM approved the Plan, BLM has approved myriad actions in reliance on it. Moreover, numerous private entities have relied on the permits, leases, rights-of-way and other authorizations that BLM approved based on the NW&CO RMP. Allowing the case to proceed could put all of those approvals in jeopardy when BLM and private entities have relied on the NW&CO RMP and the Ninth Circuit's ruling upholding it. *See Pacific Rivers*, 815 Fed. Appx. at 108-10. It would be

inequitable to allow Cascadia Wildlands to pursue this claim now, particularly when Cascadia Wildlands could have brought the CRA claim when it initially challenged the Plan.

**V. Plaintiff's Complaint is An Improper Programmatic Challenge**

Plaintiff's Complaint also should be dismissed because it is an improper programmatic challenge. Under the APA, a plaintiff may challenge discrete final agency actions, but it may not challenge the entirety of an agency program. That is precisely what Plaintiff is doing in this case. Plaintiff argues that, due to the alleged failure to submit the Plan to Congress, the NW&CO RMP has not been in effect for the past decade and therefore all "actions and authorizations adopted under the NW&CO RMP" were issued when the Plan was not in effect and "must be declared unlawful and vacated under the APA." Am. Compl. ¶¶ 81-82. This is not permissible under the APA.

Judicial review under the APA is limited to "final agency action." 5 U.S.C. § 704. This requirement has two aspects. It is "axiomatic that Plaintiffs must identify an 'agency action' to obtain review under the APA." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas,* 5 F.4th 997, 1010 (9th Cir. 2021) (citation omitted). Under the APA, agency action is "'circumscribed' and 'discrete,' such as 'a rule, order, license, sanction [or] relief.'" *Id.* (citation omitted). The Supreme Court has explained that the "limitation to discrete agency action precludes . . . [a] broad programmatic attack" on agency activities. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 893 (1990) ("[Alleged] flaws in the entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA . . . .").

Here, Cascadia Wildlands seeks to overturn every action taken by BLM implementing the NW&CO RMP over the last decade and to enjoin BLM from taking future action under the Plan

as well. Am. Compl. at 13 (asking the Court to "[d]eclare that all permits, leases, rights of way, and other site-specific authorizations issued pursuant to the NW&CO RMP are null and void, and as a legal matter, were never issued," to "[p]ostpone the effective date" of all site-specific actions taken pursuant to the NW&CO RMP, and to "permanently enjoin Defendants and all corporations, organizations, assigns, contractors, and persons acting in concert or participation with Defendants from taking any action" based on any "site-specific authorizations that have been issued pursuant to the NW&CO RMP"). The APA simply does not allow a litigant to seek to overturn a decade of approvals in one fell swoop. *See Lujan*, 497 U.S. at 894 (observing that, although the "case-by-case approach [mandated by the APA] is understandably frustrating to an organization, such as respondent, which has as its objective across the board protection of our Nation's wildlife and the streams and forests that support it," under the APA, this approach "is the traditional, and remains the normal, mode of operation of the courts."). Because Plaintiff's Complaint seeks improper programmatic relief, it must be dismissed.

## CONCLUSION

Plaintiff's sole claim is barred for multiples jurisdictional reasons. It is barred by section 805 of the CRA, and also by the doctrines of res judicata, judicial estoppel, and the statute of limitations/laches. Moreover, Plaintiff's Complaint is an improper programmatic attack. Therefore, Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted this 18th day of September 2026,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Luther L. Hajek*
LUTHER L. HAJEK, CO Bar No. 44303
U.S. Department of Justice
Energy and Natural Resources Division
Natural Resources Section

999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Tel: (303) 241-0826; Fax: (303) 844-1350
E-mail: luke.hajek@usdoj.gov

*Counsel for Defendant*