SUSAN JANE M. BROWN (OSB #054607)
SILVIX RESOURCES
4107 NE Couch St.
Portland, OR 97232
(503) 680-5513
sjb@silvix.org

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **CASCADIA WILDLANDS**,<br><br>*Plaintiff,*<br><br>vs.<br><br>**DOUG BURGUM**, et al.,<br><br>*Defendants,*<br><br>**AMERICAN FOREST RESOURCE COUNCIL**, et al.<br><br>*Defendants-Intervenors.* | Civ. Case No. 6:26-cv-1262-AP<br><br>**CONSOLIDATED RESPONSE TO MOTIONS TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS


I. INTRODUCTION. .....1

II. STANDARDS OF REVIEW. .....2

III. CRA SECTION 805 DOES NOT BAR REVIEW OF CASCADIA'S APA CLAIM. .....4

- A. The CRA's Text and Structure Do Not Preclude Review of the Predicate Legal Question Presented. .....4
- B. The Moving Parties' Authorities Do Not Resolve Cascadia's Distinct APA Claim. .....7
- C. The CRA's Contemporaneous Legislative History Confirms That Courts May Determine Whether a Rule Is in Effect. .....9

IV. CASCADIA'S CHALLENGE TO THE 2026 ALOHA TROUT DECISION IS TIMELY. .....11

- A. Cascadia's Claim Accrued When BLM Approved Aloha Trout in 2026. .....11
- B. Defendant-Intervenors' Continuing Violation Argument Responds to a Theory Cascadia Does Not Advance. .....12
- C. Federal Defendants' Laches Defense Fails. .....13

V. RES JUDICATA DOES NOT BAR CASCADIA'S CHALLENGE TO ALOHA TROUT. .....14

- A. Aloha Trout Did Not Exist When Pacific Rivers Was Litigated. .....14
- B. Cascadia's Present Claim Does Not Arise from the Same Transactional Nucleus as its 2016 Plan Challenge. .....15
- C. Cascadia's Failure to Raise the CRA in Pacific Rivers Does Not Preclude a Later Challenge to Aloha Trout. .....16

VI. FEDERAL DEFENDANTS' JUDICIAL ESTOPPEL DEFENSE FAILS. .....17

VII. CASCADIA CHALLENGES A DISCRETE FINAL AGENCY ACTION, NOT AN AGENCY PROGRAM. .....19

VIII. RELIANCE AND POTENTIAL SYSTEM-WIDE CONSEQUENCES DO NOT WARRANT DISMISSAL. .....20

IX. CONCLUSION. .....21

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) .......... 4

*Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018) .......... 4

*Apache Survival Coalition v. United States*, 21 F.3d 895 (9th Cir. 1994) .......... 13

*Azar v. Allina Health Services*, 587 U.S. 566 (2019) .......... 8

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) .......... 10

*Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994) .......... 3

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) .......... 10

*California Communities Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012) .......... 20

*California v. U.S. Environmental Protection Agency*, 2026 WL 2593640 (D.D.C. Sept. 2, 2026), *appeals pending*, Nos. 26-5330, 26-5336 (D.C. Cir.) .......... 7

*Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019) .......... 7

*Center for Food Safety v. Regan*, 56 F.4th 648 (9th Cir. 2022) .......... 5, 20

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) .......... 16

*City of Arlington v. FCC*, 569 U.S. 290 (2013) .......... 20

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024) .......... 11

*Daniels-Hall v. National Education Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......... 3

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996) .......... 3

*Durning v. Citibank, N.A.*, 950 F.2d 1419 (9th Cir. 1991) .......... 9

*Foster v. U.S. Department of Agriculture*, 68 F.4th 372 (8th Cir. 2023), *judgment vacated*, 144 S. Ct. 2707 (2024), *judgment vacated*, 2024 WL 4717247 (8th Cir. Nov. 7, 2024) .......... 9

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001) .......... 17

*Holt v. County of Orange*, 91 F.4th 1013 (9th Cir. 2024) .......... 3

*Howard v. City of Coos Bay*, 871 F.3d 1032 (9th Cir. 2017) ................................................14–17

*Hyatt v. Office of Management & Budget*, 908 F.3d 1165 (9th Cir. 2018)....................................6

*Jajati v. United States Customs & Border Protection*, 102 F.4th 1011 (9th Cir. 2024).................4

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ..............................13

*Kansas Natural Resource Coalition v. U.S. Department of the Interior*, 971 F.3d 1222 (10th Cir. 2020)..........................................................................................................8, 9

*Klamath-Siskiyou Wildlands Center v. Boody*, 468 F.3d 549 (9th Cir. 2006)..............................18

*Klamath-Siskiyou Wildlands Center v. U.S. Bureau of Land Management*, 2021 WL 5356969 (D. Or. Aug. 24, 2021), *report and recommendation adopted*, 2021 WL 5355919 (D. Or. Nov. 16, 2021)..........................................................................................16

*Klamath-Siskiyou Wildlands Center v. U.S. Fish & Wildlife Service*, 2022 WL 4599259 (D. Or. Sept. 30, 2022).........................................................................................15, 16

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ..........................................................................3

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ....................................................4, 6

*Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) .......................................................19

*McCarthy v. United States*, 850 F.2d 558 (9th Cir. 1988) .............................................................3

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012)............18

*Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225 (D.C. Cir. 2009) ............................8, 9

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990).................................21

*Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985 (9th Cir. 2005) .....................................15

*National Association of Manufacturers v. Department of Defense*, 583 U.S. 109 (2018) ............10

*New Hampshire v. Maine*, 532 U.S. 742 (2001)..................................................................17, 18

*Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) .............................................19

*Pacific Rivers v. U.S. Bureau of Land Management*, No. 6:16-cv-01598-JR, 2018 WL 6735090 (D. Or. Oct. 12, 2018), *report and recommendation adopted*, 2019 WL 1232835 (D. Or. Mar. 15, 2019), *aff'd*, 815 F. App'x 107 (9th Cir. 2020) .................... passim

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ............................................................3

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)....................................................3

*Save Our Skies LA v. Federal Aviation Administration*, 50 F.4th 854 (9th Cir. 2022) ................12

*Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001).................................14

*Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002)...............................................................3

*Taylor v. Sturgell*, 553 U.S. 880 (2008)..........................................................................................14

*Teche Vermilion Sugar Cane Growers Ass'n v. Su*, 749 F. Supp. 3d 697 (W.D. La. 2024), *amended on other grounds*, 2025 WL 1969937 (W.D. La. July 16, 2025) ..............................8

*Texas Savings & Community Bankers Ass'n v. Federal Housing Finance Board*, No. A 97 CA 421 SS, 1998 WL 842181 (W.D. Tex. June 25, 1998), aff'd, 201 F.3d 551 (5th Cir. 2000) ...........................................................................................................................5, 6

*Tohono O'odham Nation v. U.S. Department of the Interior*, 138 F.4th 1189 (9th Cir. 2025)...................................................................................................11, 12, 19, 20

*Tugaw Ranches, LLC v. U.S. Dep't of Interior*, 362 F. Supp. 3d 879 (D. Idaho 2019)..............5, 6

*Turtle Island Restoration Network v. U.S. Department of State*, 673 F.3d 914 (9th Cir. 2012) ...................................................................................................................................17

*United States ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*, 720 F.3d 1174 (9th Cir. 2013)...........................................................................................................3

*United States v. Carrillo-Lopez*, 68 F.4th 1133 (9th Cir. 2023) ....................................................9

*Via Christi Regional Medical Center, Inc. v. Leavitt*, 509 F.3d 1259 (10th Cir. 2007), *abrogated on other grounds by Azar v. Allina Health Services*, 587 U.S. 566 (2019).............8

*Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021) ...........................................................................................................................19

*Z Channel Ltd. Partnership v. Home Box Office, Inc.*, 931 F.2d 1338 (9th Cir. 1991)................21

**Federal Statutes**

5 U.S.C. § 702...............................................................................................................................4

5 U.S.C. § 704.......................................................................................................................4, 12, 19

5 U.S.C. § 706...............................................................................................................................6

5 U.S.C. § 801(a)(1)(A) ........................................................................................... passim

5 U.S.C. § 801(a)(3) .......... 9

5 U.S.C. § 805 .......... passim

28 U.S.C. § 2401(a) .......... 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) .......... 2, 3

Fed. R. Civ. P. 12(b)(6) .......... 2, 3

Fed. R. Civ. P. 15(a)(2) .......... 21

Fed. R. Civ. P. 54(c) .......... 21

Fed. R. Evid. 201(b) .......... 3

**Legislative Materials**

142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996) .......... 9, 10

H.R. Rep. No. 104-874, at 67 (1997) .......... 3, 10

## I. INTRODUCTION.

Federal Defendants and Defendant-Intervenors (jointly, Moving Parties) offer overlapping threshold defenses to avoid review of the Bureau of Land Management's (BLM's) 2026 approval of the Aloha Trout Forest Management Project (Aloha Trout). Both motions invoke Section 805 of the Congressional Review Act (CRA), the statute of limitations, and res judicata as bars to judicial review. Federal Defendants additionally appeal to judicial estoppel, laches, and the prohibition on programmatic challenges, and Defendant-Intervenors resort to the continuing violation doctrine and warn of reliance interests and system-wide consequences as precluding review of Cascadia's claim. All of those defenses rest on the same basic mischaracterization of Cascadia's claim.

Cascadia brings an Administrative Procedure Act (APA) challenge to a single, discrete final agency action: BLM's approval of Aloha Trout. Cascadia does not ask the Court to review or remedy BLM's 2016 failure to submit the Northwest and Coastal Oregon Resource Management Plan (NW&CO RMP) to Congress under the CRA, nor does it seek to reopen every action BLM has taken under that RMP. Cascadia challenges Aloha Trout as contrary to law because BLM relied on the 2016 NW&CO RMP, which never took legal effect because BLM failed to submit it to Congress and the Comptroller General as the CRA requires. BLM therefore did not approve Aloha Trout in accordance with a legally effective RMP, as the Federal Land Policy and Management Act (FLPMA) requires. The CRA is relevant because it governs the predicate question whether the NW&CO RMP on which BLM relied had taken legal effect, but that predicate question does not transform Cascadia's APA challenge to Aloha Trout into an unreviewable cause of action "under the CRA."

Once the challenged action is correctly identified, the Moving Parties' shared defenses fail. Cascadia's claim accrued when BLM approved Aloha Trout in 2026, not when BLM adopted the RMP a decade earlier. The claim could not have been litigated in *Pacific Rivers* because Aloha Trout did not exist when *Pacific Rivers* was litigated. Section 805 bars review of CRA determinations, findings, actions, and omissions themselves; but it does not bar a court from considering the legal effect of § 801(a)(1)(A) when reviewing a later final agency action properly before the court.

The motion-specific defenses fare no better. Cascadia's prior project litigation did not commit it to a position that BLM could lawfully rely on the RMP despite non-submission, so Federal Defendants' judicial estoppel theory fails. Cascadia promptly challenged the 2026 Aloha Trout decision, defeating laches. Aloha Trout is a discrete final agency action, not an agency program, so a challenge to it is permissible. Defendant-Intervenors' continuing violation argument responds to a theory Cascadia does not advance, and their warnings about reliance and disruption concern the scope of any remedy, not whether BLM lawfully approved Aloha Trout. The Court should deny both motions to dismiss.

## II. STANDARDS OF REVIEW.

Federal Defendants move to dismiss under Rule 12(b)(1). Federal Defendants' Motion to Dismiss (Fed. Mot.) 5–6. Defendant-Intervenors move under both Rule 12(b)(1) and Rule 12(b)(6). Defendant-Intervenors' Motion to Dismiss (Int. Mot.) 7–8. Both jurisdictional challenges are facial: neither set of moving parties submits competing evidence or disputes Cascadia's jurisdictional allegations, but instead contends that Section 805 deprives the Court of subject matter jurisdiction as a matter of law.

On a facial Rule 12(b)(1) motion, the court accepts the complaint's material factual allegations as true, construes them in Cascadia's favor, and asks whether those allegations are legally sufficient to establish jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).[1] Defendant-Intervenors also invoke Rule 12(b)(6) in arguing that Cascadia's claim is barred by the statute of limitations and res judicata. Int. Mot. 7–8, 11–14. A claim may be dismissed as untimely at the pleading stage "only when the running of the statute [of limitations] is apparent on the face of the complaint." *Holt v. County of Orange*, 91 F.4th 1013, 1017 (9th Cir. 2024) (*quoting United States ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)). Claim preclusion likewise may be resolved on a motion to dismiss only where the prior judgment and matters properly subject to judicial notice establish the defense as a matter of law. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

Under either rule, the Court must evaluate the claim Cascadia actually pleaded. Cascadia challenges BLM's 2026 approval of Aloha Trout under the APA. First Am. Compl. ¶¶ 71–83. Both motions instead mischaracterize this case as a belated challenge to the 2016 RMP or to BLM's failure to submit that RMP under the CRA. The Moving Parties' jurisdictional, limitations, and preclusion defenses all depend on collapsing a predicate legal question – the RMP's legal effectiveness – into the claim itself. But that conflation cannot justify dismissal: the

---

[1] The Moving Parties present facial jurisdictional challenges and acknowledge that a court resolving a Rule 12(b)(1) motion may consider materials outside the pleadings when appropriate. Fed. Mot. 5 (*citing McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988)); Int. Mot. 7 (*citing Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996)). Cascadia therefore submits the accompanying Declaration of Susan Jane M. Brown, attaching true and correct copies of the Congressional Record statement concerning the CRA and H.R. Rep. No. 104-874. Cascadia submits those official materials not as additional jurisdictional evidence, but to provide the Court with the complete sources bearing on the statutory, legal, and historical context relevant to the Moving Parties' arguments. The Court may also take judicial notice of the existence, issuance, and contents of these official government records because their authenticity is not reasonably subject to dispute. FED. R. EVID. 201(b); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Daniels-Hall v. National Education Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

Court must evaluate the APA claim Cascadia actually pleaded, not a strawman the Moving Parties have constructed.

## III. CRA SECTION 805 DOES NOT BAR REVIEW OF CASCADIA'S APA CLAIM.

### A. The CRA's Text and Structure Do Not Preclude Review of the Predicate Legal Question Presented.

The Moving Parties' Section 805 arguments begin by mischaracterizing the agency action under review. Cascadia does not ask the Court to review any CRA "determination, finding, action, or omission," or to compel BLM to comply with the CRA's submission requirement. Cascadia challenges BLM's 2026 approval of Aloha Trout under the APA, and "there is a strong presumption in favor of judicial review of final agency action under the APA." *Jajati v. United States Customs & Border Protection*, 102 F.4th 1011, 1016 (9th Cir. 2024) (quotation marks omitted). Only clear and convincing evidence of contrary legislative intent overcomes that presumption. *Allen v. Milas*, 896 F.3d 1094, 1103 (9th Cir. 2018) (*quoting Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41 (1967)). The Moving Parties have not made that showing as to project approvals like Aloha Trout.

Section 805 provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. The challenged action before this Court is BLM's 2026 approval of Aloha Trout. Whether the NW&CO RMP had legally taken effect is a predicate legal question relevant to whether BLM lawfully relied on that plan when approving the project. The APA supplies Cascadia's cause of action and presumptively authorizes review of that final agency action. *See* 5 U.S.C. §§ 702, 704; *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391–92 (2024). The question is therefore not whether Cascadia may sue "under the CRA," but whether § 805 withdraws the Court's otherwise available authority to consider that predicate question when reviewing Aloha Trout. It does not.

That distinction is familiar in administrative law. In *Center for Food Safety v. Regan*, petitioners sought review of the Environmental Protection Agency's (EPA's) decision approving an amended pesticide registration under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). The Ninth Circuit exercised the judicial review authority supplied by FIFRA over petitioners' FIFRA and Endangered Species Act (ESA) claims and applied the APA's standard of review to determine whether EPA had complied with the ESA's consultation requirements before approving the registration. 56 F.4th 648, 652–57 (9th Cir. 2022). The ESA question did not change the agency action under review: the challenged action remained EPA's approval of the amended FIFRA registration. The same is true here: determining whether the NW&CO RMP was legally operative requires the Court to consider the CRA, but that predicate legal question does not transform Cascadia's APA challenge to Aloha Trout into a freestanding CRA claim.

Section 801(a)(1)(A) provides that "[b]efore a rule can take effect," an agency must submit specified materials to Congress and the Comptroller General. 5 U.S.C. § 801(a)(1)(A). Section 805 separately bars review of determinations, findings, actions, and omissions "under this chapter." Those provisions readily operate together: a court may be prohibited from directly reviewing or compelling an agency's CRA submission decision while still, in a case otherwise properly before it, considering the legal consequence of non-submission when the rule's effectiveness bears on a later final agency action.[2]

---

[2] Federal Defendants' reliance on *Texas Savings & Community Bankers Ass'n v. Federal Housing Finance Board*, No. A 97 CA 421 SS, 1998 WL 842181, at *7 n.15 (W.D. Tex. June 25, 1998), *aff'd*, 201 F.3d 551 (5th Cir. 2000), is misplaced. *Texas Savings* is nonbinding, out-of-district and out-of-circuit authority, and the § 805 discussion on which Federal Defendants rely appears in a footnote addressing the distinct argument that § 805 insulates only <u>congressional</u> – not <u>agency</u> – action from judicial review. Cascadia makes no such argument. As the court in *Tugaw Ranches* observed in distinguishing the case, *Texas Savings* was "not exactly on point," and the cited language came from a "footnote in an out of District and out of Circuit case." *Tugaw Ranches, LLC v. U.S. Dep't of Interior*, 362 F. Supp. 3d 879, 882 (D. Idaho 2019). Nor did *Texas Savings* address the question presented here: whether a court exercising APA jurisdiction over later final <u>agency</u> action may determine, as a predicate legal question, whether the rule on which the agency relied ever took effect. And although the Fifth Circuit affirmed the judgment in *Texas Savings*, its published opinion did not address § 805; *Tugaw* expressly noted that the appellate affirmance was silent

The APA's structure reinforces that reading. Chapter 7 directs reviewing courts to "decide all relevant questions of law" and "interpret constitutional and statutory provisions." 5 U.S.C. § 706. Chapter 8 withdraws review only for the particular CRA determinations, findings, actions, and omissions identified in § 805. Nothing in that structure converts § 805 into a prohibition on deciding every legal question in which the CRA supplies relevant law. The Ninth Circuit does not extend statutory judicial review bars beyond the specific agency determinations or actions Congress expressly made unreviewable. *See Hyatt v. Office of Management & Budget*, 908 F.3d 1165, 1171–72 (9th Cir. 2018) (declining to extend a bar covering specified OMB decisions to a different agency decision outside the bar's terms). And *Loper Bright* underscores the judiciary's independent responsibility to resolve statutory questions presented in cases properly before it. 603 U.S. at 391–92. Section 805 therefore does not foreclose judicial review of Cascadia's APA challenge to Aloha Trout.

Neither motion argues that the NW&CO RMP falls outside the CRA's definition of "rule." Instead, both Moving Parties assume Cascadia's allegation of non-submission and argue that § 805 prevents the Court from considering the effect of that non-submission on subsequent project-level decisions. See Fed. Mot. 7–15; Int. Mot. 8–10. The question presented is therefore narrow: whether § 805 bars the Court, in reviewing BLM's later approval of Aloha Trout under the APA and FLPMA, from determining the effect of that non-submission on the legality of the subsequent project approval. It does not.

The Moving Parties' contrary construction would create a statutory anomaly. Congress expressly conditioned a rule's effectiveness on submission, yet under their theory no court could determine whether that condition was satisfied even when the rule's legal effectiveness

---

on that issue. *Id*. at 884–85. Thus, *Texas Savings* supplies neither binding nor on-point authority for Federal Defendants' broader reading of § 805.

determines the lawfulness of a later final agency action. Section 805 does not require that result. It bars review of CRA determinations, findings, actions, and omissions themselves; it does not bar a court from determining what law governed a separate final agency action properly before it.

### B. The Moving Parties' Authorities Do Not Resolve Cascadia's Distinct APA Claim.

Both motions rely on *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019), for their arguments, but that case does not resolve the question presented here. In *Bernhardt*, the plaintiff directly challenged Congress's enactment of a joint resolution of disapproval under the CRA. *Id.* at 562–63. The Ninth Circuit held that § 805 deprived it of jurisdiction to review a congressional "action under the CRA." *Id.* at 563. Cascadia does not challenge Congress's exercise of CRA authority, seek review of BLM's 2016 omission, or ask the Court to compel BLM to submit the RMP. Nothing in *Bernhardt* addressed whether § 805 prevents a court exercising APA jurisdiction over a later final agency action from considering whether the legal instrument on which the agency relied had taken effect.

A recent district court applied that distinction in closely analogous circumstances. In *California v. U.S. Environmental Protection Agency*, 2026 WL 2593640, at *16–21 (D.D.C. Sept. 2, 2026), *appeals pending*, Nos. 26-5330, 26-5336 (D.C. Cir.), California challenged EPA's decisions to reclassify Clean Air Act waiver orders as CRA "rules," not EPA's later transmission of those orders to Congress. The court held that § 805 did not bar APA review of the reclassification decisions, rejecting EPA's contention that those decisions were "inextricably intertwined" with the CRA submissions. *Id.* at *16–21. Although reclassification might be a prerequisite to submission, only the submission decision was shielded by § 805. *Id.* at *20–21. The same distinction applies here: Cascadia challenges BLM's later approval of Aloha Trout,

with the RMP's legal effectiveness arising as a predicate question in reviewing that separate, subsequent final agency action.

The direct noncompliance cases cited by the Moving Parties are materially different than the present case. *Kansas Natural Resource Coalition v. U.S. Department of the Interior* involved a suit seeking to compel Interior to submit a rule to Congress, and the Tenth Circuit held that § 805 barred review of that agency omission. 971 F.3d 1222, 1226, 1235–38 (10th Cir. 2020). *Montanans for Multiple Use v. Barbouletos* sought to invalidate Forest Service plan amendments specifically because the agency had failed to satisfy the CRA's reporting requirement. 568 F.3d 225, 227, 229 (D.C. Cir. 2009). And *Teche Vermilion Sugar Cane Growers Ass'n v. Su* held unreviewable a claim directly challenging an agency's failure to submit regulations for CRA review. 749 F. Supp. 3d 697, 714 (W.D. La. 2024), *amended on other grounds*, 2025 WL 1969937 (W.D. La. July 16, 2025). Those cases do not address an APA challenge to a later final agency action.

*Via Christi Regional Medical Center, Inc. v. Leavitt* arose in a closer posture because the plaintiff there invoked CRA non-submission as an alternative argument in an APA challenge to a later Medicare reimbursement decision. 509 F.3d 1259, 1271 n.11 (10th Cir. 2007), *abrogated on other grounds by Azar v. Allina Health Services*, 587 U.S. 566 (2019). But the court there disposed of that argument in a brief footnote stating, without analysis, that § 805 precludes judicial review of an agency's compliance with the CRA. *Id.* The court did not examine the distinction presented in the present case between reviewing or compelling CRA compliance and considering the legal effect of non-submission as a predicate to reviewing a later final agency action. That nonbinding footnote does not resolve Cascadia's claim in the Moving Parties' favor.

Defendant-Intervenors' reliance on *Foster v. U.S. Department of Agriculture* supplies no precedential support. In subsequent proceedings, the Supreme Court vacated the Eighth Circuit's judgment after granting certiorari, and the Eighth Circuit then vacated its opinion. *See Foster v. U.S. Department of Agriculture*, 68 F.4th 372 (8th Cir. 2023), *judgment vacated*, 144 S. Ct. 2707 (2024), *judgment vacated*, 2024 WL 4717247 (8th Cir. Nov. 7, 2024); Int. Mot. 10. A vacated appellate decision carries no precedential force. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991); *see also United States v. Carrillo-Lopez*, 68 F.4th 1133, 1143 n.4 (9th Cir. 2023). And *Foster*, like *Kansas* and *Barbouletos*, involved a claim that an agency rule was invalid because the agency failed to submit it under the CRA, not an APA challenge to a later project approval.

Cascadia asks for something materially different: review of BLM's 2026 approval of Aloha Trout and a determination whether that project was authorized in accordance with a legally operative RMP. None of the Moving Parties' authorities holds that § 805 strips a court of jurisdiction over that later final agency action merely because deciding its legality requires consideration of the CRA.

### C. The CRA's Contemporaneous Legislative History Confirms That Courts May Determine Whether a Rule Is in Effect.

The CRA's contemporaneous legislative history confirms the distinction already apparent from the statutory text and structure. The principal Congressional sponsors explained that § 805's limitation on judicial review "in no way prohibits a court from determining whether a rule is in effect" in a case properly before it and specifically stated that a court might recognize that a rule "has no legal effect due to the operation of" § 801(a)(1)(A) or § 801(a)(3). 142 Cong. Rec. S3686 (daily ed. Apr. 18, 1996); Brown Decl., Exhibit A at S3686. That is precisely the distinction Cascadia advances: § 805 may bar direct review of BLM's omission while leaving a

court free to determine the legal consequence of non-submission when the RMP's effectiveness becomes relevant in reviewing a separate, subsequent final agency action.

Federal Defendants misread the statement as limited to the consequences of congressional disapproval. Fed. Mot. 14. But § 801(a)(1)(A) is not the disapproval provision; it requires submission "before a rule can take effect." The sponsors expressly identified that subsection as one whose "operation" may leave a rule without legal effect. 142 Cong. Rec. S3686; Brown Decl., Exhibit A at S3686. The statement therefore speaks directly to the question Federal Defendants say courts may never decide.

Cascadia does not invoke the congressional sponsors' statement to override unambiguous statutory text. The text and structure of the CRA come first: the statement confirms the distinction between reviewing a CRA act or omission and determining the CRA's legal effect in a case otherwise properly before the court. H.R. Rep. No. 104-874, at 67 (1997); Brown Decl., Exhibit B at 67. Federal Defendants' reliance on *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002), *National Association of Manufacturers v. Department of Defense*, 583 U.S. 109 (2018), and *Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011), establishes only that legislative history cannot contradict clear statutory text. Cascadia agrees: here, the congressional sponsors' statement confirms rather than displaces the statutory reading Cascadia advances.

This case does not seek judicial review "under" the CRA. It seeks APA review of BLM's 2026 approval of Aloha Trout. The legal effectiveness of the NW&CO RMP is a predicate question in that review. Section 805 does not bar the Court from deciding it.

## IV. CASCADIA'S CHALLENGE TO THE 2026 ALOHA TROUT DECISION IS TIMELY.

### A. Cascadia's Claim Accrued When BLM Approved Aloha Trout in 2026.

Both motions argue that Cascadia's claim accrued in 2016 when BLM adopted the NW&CO RMP, began implementing it, and Cascadia suffered injuries from implementing actions under the plan. Fed. Mot. 20–21; Int. Mot. 11–13. That argument again substitutes a claim challenging the RMP for the claim Cascadia actually brings. The question is not when Cascadia first could have challenged the RMP or first suffered injury from some action implementing it. The question is when Cascadia's present claim challenging Aloha Trout accrued.

The Ninth Circuit begins the statute of limitations inquiry by asking "[w]hat exactly do Plaintiffs challenge?" *Tohono O'odham Nation v. U.S. Department of the Interior*, 138 F.4th 1189, 1199 (9th Cir. 2025). There, the court distinguished an earlier record of decision from later implementation decisions and held the later notices to proceed were independently reviewable. *Id.* at 1200–05. The same discipline is required here. Cascadia challenges BLM's 2026 approval of Aloha Trout, not BLM's 2016 adoption of the NW&CO RMP.

Once the challenged action is correctly identified, accrual is straightforward. Section 2401(a) requires an APA action to be filed within six years after the right of action accrues. 28 U.S.C. § 2401(a). An APA cause of action is not complete until there is final agency action and injury to the plaintiff. *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799, 804, 809 (2024). Aloha Trout did not exist in 2016. BLM did not approve it until 2026, and Cascadia could not have been injured by that final agency action before BLM took it.[3]

[3] Cascadia does not contend that subsequent CRA developments restarted an expired limitations period. Its limitations argument rests on BLM's 2026 approval of Aloha Trout, not later legal developments concerning RMPs. Federal Defendants also suggest that Cascadia seeks to invalidate BLM actions implementing the NW&CO RMP

The Moving Parties' reliance on Cascadia's prior project litigation establishes only that Cascadia suffered injuries from different BLM decisions before those caused subsequently by Aloha Trout. Int. Mot. 12; *see also* Fed. Mot. 20–21. Those earlier injuries say nothing about when a distinct claim challenging the 2026 Aloha Trout decision accrued. A later, independently reviewable final agency action gives rise to a later claim even when adjudicating that claim requires the court to consider an earlier agency decision or legal instrument. *Tohono O'odham Nation*, 138 F.4th at 1199–1205.

Cascadia filed this action within six years of BLM's approval of Aloha Trout. Its APA challenge to that decision is timely.

### B. Defendant-Intervenors' Continuing Violation Argument Responds to a Theory Cascadia Does Not Advance.

Defendant-Intervenors' reliance on the continuing violation doctrine is misplaced because Cascadia does not invoke it. Int. Mot. 11–12 (*citing Save Our Skies LA v. Federal Aviation Administration*, 50 F.4th 854, 865 (9th Cir. 2022)). Cascadia does not contend that BLM's 2016 adoption of the NW&CO RMP created a single claim that remained continuously actionable as BLM implemented the RMP over time. Nor does Cascadia argue that later CRA developments revived or restarted a limitations period applicable to a claim challenging the 2016 RMP itself.

Cascadia's theory is different and simpler: BLM took a new, discrete final agency action when it approved Aloha Trout in 2026, and Cascadia challenges that action under the APA. *See* 5 U.S.C. § 704; *Tohono O'odham Nation*, 138 F.4th at 1199–1205. The need to determine the

---

that occurred more than six years ago. Fed. Mot. 20 n.3. Whatever statute of limitations questions might arise from claims directed at those earlier actions do not make Cascadia's 2026 challenge to Aloha Trout untimely. The scope and effect of any relief are separate remedial questions.

RMP's legal effect does not convert Cascadia's challenge into an impermissible effort to extend the limitations period for a claim that accrued in 2016.

**C. Federal Defendants' Laches Defense Fails.**

Federal Defendants' laches argument rests on the same mistaken premise as their statute of limitations argument: that Cascadia "slept" for nearly a decade on a claim challenging the 2016 RMP. Fed. Mot. 21. But Cascadia challenges BLM's 2026 approval of Aloha Trout. Laches requires unreasonable delay in asserting the claim and prejudice caused by that delay. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835–36 (9th Cir. 2002). Neither element is satisfied here.

First, Cascadia did not unreasonably delay. Aloha Trout did not exist in 2016. BLM approved it in 2026, and Cascadia filed suit shortly after BLM took that final agency action. Federal Defendants' contention that Cascadia should have raised the RMP's CRA status earlier again confuses a predicate legal question with the claim itself. Whatever arguments Cascadia might have made concerning the RMP before 2026, it could not have challenge Aloha Trout before BLM approved it. These are not the facts supporting a showing of a lack of diligence required for laches. *See Apache Survival Coalition v. United States*, 21 F.3d 895, 905–06 (9th Cir. 1994).

Second, Federal Defendants identify no prejudice caused by any putative delay in challenging Aloha Trout. Any institutional or private reliance on the NW&CO RMP accumulated before BLM approved Aloha Trout and therefore was not caused by Cascadia's alleged delay in challenging the 2026 decision. Cascadia's prompt challenge to Aloha Trout did not create whatever reliance on the NW&CO RMP that may have developed over the preceding decade.

Federal Defendants also conflate prejudice relevant to laches with concerns about the scope of relief. Those are distinct issues. Any reliance interests associated with broader retroactive relief may bear on the appropriate remedy if Cascadia prevails, but they do not establish unreasonable delay in challenging a 2026 decision. Because Cascadia timely challenged the final agency action at issue (Aloha Trout) and Federal Defendants cannot show prejudice caused by unproven delay in bringing that claim, laches provides no basis for dismissal.

## V. RES JUDICATA DOES NOT BAR CASCADIA'S CHALLENGE TO ALOHA TROUT.

### A. Aloha Trout Did Not Exist When *Pacific Rivers* Was Litigated.

Both motions rely on *Pacific Rivers v. U.S. Bureau of Land Management*, No. 6:16-cv-01598-JR, 2018 WL 6735090 (D. Or. Oct. 12, 2018), *report and recommendation adopted*, 2019 WL 1232835 (D. Or. Mar. 15, 2019), *aff'd*, 815 F. App'x 107 (9th Cir. 2020) (collectively, *Pacific Rivers*). But Cascadia's present claim did not exist when that case began. Under federal common law, "claim preclusion does not apply to claims that accrue after the filing of the operative complaint." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017).[4] Cascadia's present claim challenges BLM's 2026 approval of Aloha Trout, a final agency action that occurred years after the *Pacific Rivers* litigation.

The Moving Parties nevertheless contend that Cascadia could have raised its CRA argument in *Pacific Rivers* because the NW&CO RMP existed at that time. Fed. Mot. 15–18; Int. Mot. 13–14. That confuses a predicate legal issue with the claim itself. Whether the RMP had legally taken effect is one question the Court must answer in deciding whether BLM lawfully approved Aloha Trout, but the RMP's adoption is not the agency action Cascadia challenges.

[4] Federal common law governs here because *Pacific Rivers* was a federal question action decided by a federal court. *See Taylor v. Sturgell*, 553 U.S. 880, 891 & n.4 (2008); *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001).

*Howard* makes the distinction clear. A later-accruing claim is not precluded merely because it arises against the same factual background or requires consideration of facts and legal issues implicated in earlier litigation. 871 F.3d at 1040. Aloha Trout did not exist when *Pacific Rivers* was litigated, and Cascadia could not have challenged a project-level decision BLM had not yet made.

**B. Cascadia's Present Claim Does Not Arise from the Same Transactional Nucleus as its 2016 Plan Challenge.**

Claim preclusion applies only where the later action involves the same claim or cause of action as the earlier suit. *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005). The Ninth Circuit considers whether the suits arise from the same transactional nucleus of facts, whether the second action would impair rights established by the first judgment, whether the suits involve infringement of the same right, and whether substantially the same evidence is presented. *Id.* The transactional nucleus inquiry is the most important. *Id.*

Those criteria are not satisfied in this case. *Pacific Rivers* involved BLM's 2016 adoption and analysis of the NW&CO RMP. The present action challenges BLM's separate 2026 decision approving Aloha Trout. The operative facts include the Aloha Trout project record, BLM's project analysis and decision, and BLM's reliance on the RMP when authorizing the project – facts that did not exist during *Pacific Rivers*. The two actions could not have been tried together.

This Court has already applied that distinction to the same 2016 RMP litigation. In *Klamath-Siskiyou Wildlands Center v. U.S. Fish & Wildlife Service*, the court held that *Pacific Rivers* did not preclude a later challenge to a 2019 biological opinion for site-specific timber projects because those projects did not exist when the RMP was adopted and the suits involved different facts and final agency actions. 2022 WL 4599259, at 15 (D. Or. Sept. 30, 2022). The

court further rejected the contention that BLM's obligation to comply with the RMP transformed the site-specific challenge into an attack on the RMP itself. *Id*.

The earlier North Landscape Project decision reinforces the same line. There, the court declined to reconsider programmatic analyses supporting the 2016 Southwestern Oregon RMP because those analyses had been litigated in *Pacific Rivers*, but expressly held that later project-level claims were not barred because the North Project "did not exist" when the earlier case was brought. *Klamath-Siskiyou Wildlands Center v. U.S. Bureau of Land Management*, 2021 WL 5356969, at *4–5 (D. Or. Aug. 24, 2021), *report and recommendation adopted*, 2021 WL 5355919 (D. Or. Nov. 16, 2021). Likewise, Ninth Circuit caselaw narrowly construes the earlier action and rejects preclusion where later litigation concerns a distinct operational decision. *Central Delta Water Agency v. United States*, 306 F.3d 938, 952–53 (9th Cir. 2002).

Adjudicating Cascadia's present claim does not threaten any right or interest established in *Pacific Rivers*. Cascadia does not seek to relitigate the National Environmental Policy Act, ESA, or Oregon and California Lands Act analyses resolved there. Instead, it challenges a later final agency action and asks whether BLM could lawfully rely on the RMP when approving that project-level action in 2026. Because Cascadia's claim arises from a distinct agency decision and distinct operative facts, it does not share the same transactional nucleus as Cascadia's 2016 plan challenge.

### C. Cascadia's Failure to Raise the CRA in *Pacific Rivers* Does Not Preclude a Later Challenge to Aloha Trout.

Claim preclusion bars claims that could have been brought earlier; it does not bar a later claim merely because one legal argument relevant to that claim might have been available earlier. *See Howard*, 871 F.3d at 1040. Cascadia could not have brought the claim now before this Court in *Pacific Rivers* because Aloha Trout – and BLM's final decision approving it – did

not exist when the operative complaint in *Pacific Rivers* was filed. Without a final agency action approving Aloha Trout, Cascadia had neither an injury caused by Aloha Trout nor the operative facts necessary to assert this APA claim. *See Turtle Island Restoration Network v. U.S. Department of State*, 673 F.3d 914, 918–19 (9th Cir. 2012) (distinguishing later claims based on governmental action that "had not yet occurred" during the earlier litigation).

Nor was Cascadia required to anticipate and litigate claims based on future agency conduct merely because some relevant legal or factual issues already existed. *Howard*, 871 F.3d at 1040. The possible availability of a CRA argument in 2016 did not make a claim challenging BLM's 2026 approval of Aloha Trout available then. Cascadia's failure to raise the CRA in *Pacific Rivers* therefore does not bar this action.

## VI. FEDERAL DEFENDANTS' JUDICIAL ESTOPPEL DEFENSE FAILS.

Federal Defendants alone invoke judicial estoppel. Fed. Mot. 18–20. The doctrine protects the integrity of the judicial process from deliberate manipulation. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782–83 (9th Cir. 2001). Courts consider whether the later litigation position is "clearly inconsistent" with the earlier one, whether the party persuaded a court to accept the earlier position, and whether the later position would confer an unfair advantage or impose an unfair detriment. *New Hampshire*, 532 U.S. at 750–51. None of those factors exist here.

First, Cascadia's positions are not clearly inconsistent. In earlier project-level litigation, Cascadia argued that particular BLM approvals failed to comply with provisions of the NW&CO RMP that BLM treated as governing those decisions. Here, Cascadia challenges a different project approval on a different legal ground: BLM could not lawfully approve Aloha Trout under FLPMA because the RMP on which it relied had not legally taken effect. Cascadia did not

previously argue that BLM satisfied § 801(a)(1)(A), that RMPs were exempt from the CRA, or that BLM could lawfully rely on the RMP despite non-submission.

*Klamath-Siskiyou Wildlands Center v. Boody* confirms the distinction. The Ninth Circuit there rejected judicial estoppel because "[a]sserting that the 2001 ROD is an effective forest management strategy is quite different than arguing that all agency actions ostensibly taken pursuant to that strategy are lawful." 468 F.3d 549, 555–56 (9th Cir. 2006). Likewise, Cascadia's prior insistence that BLM comply with the RMP BLM applied to those project-level decisions did not commit Cascadia to the distinct position that BLM could lawfully rely on that RMP to approve Aloha Trout notwithstanding § 801(a)(1)(A).

Second, no court accepted the position Federal Defendants now attribute to Cascadia. Prior courts may have accepted that particular project approvals were required to comply with provisions of the NW&CO RMP. But no court accepted – or was asked to decide – that BLM could lawfully rely on the RMP to approve a project despite non-submission under § 801(a)(1)(A). A judgment concerning project-level compliance with particular RMP provisions does not constitute judicial acceptance of that unlitigated proposition.

Third, Cascadia obtained no unfair advantage. It did not secure relief by persuading a court that the RMP had legally taken effect; it sought review of particular project approvals within the framework BLM chose to apply. Cascadia now challenges a separate 2026 approval on a distinct legal ground no prior court was asked to decide. That is not an attempt to change positions "according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749–51. Unlike the mutually exclusive factual positions in *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993–95 (9th Cir. 2012), Cascadia's positions are entirely compatible. Judicial estoppel does not apply and does not warrant dismissal.

## VII. CASCADIA CHALLENGES A DISCRETE FINAL AGENCY ACTION, NOT AN AGENCY PROGRAM.

Federal Defendants alone contend that Cascadia brings an impermissible programmatic challenge. Fed. Mot. 23–24. That argument again treats the predicate legal question concerning the RMP's effectiveness as though it were the claim Cascadia actually pleaded. Cascadia challenges BLM's 2026 approval of Aloha Trout, a discrete final agency action reviewable under the APA. Resolving whether the RMP had legally taken effect does not transform that project-level challenge into a request for judicial supervision of an agency program.

The APA permits review of "final agency action." 5 U.S.C. § 704. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 890–93 (1990), and *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62–67 (2004), prohibit wholesale review of ongoing agency operations untethered to a discrete agency action. The Ninth Circuit similarly requires a "circumscribed" and "discrete" action. *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997, 1010 (9th Cir. 2021). Cascadia identifies exactly that: BLM's 2026 final agency action approving Aloha Trout.

The contrast is substantial. *Lujan* involved wholesale review of a broad land withdrawal "program" consisting of numerous decisions across millions of acres. 497 U.S. at 890–93. *SUWA* involved generalized plan obligations rather than a discrete action taken or unlawfully withheld. 542 U.S. at 62–67. Cascadia asks the Court to review one distinct project approval. The need to determine whether the governing RMP was legally operative does not make that action any less discrete.

*Tohono O'odham Nation* reinforces the point. The government there argued that a challenge to later implementation decisions was really an attack on an earlier programmatic record of decision. The Ninth Circuit rejected that characterization and treated the later notices to

proceed as independently reviewable final agency actions. 138 F.4th at 1200–04. A later project-level action does not cease to be discrete and final because its legality depends on the status or legal effect of an earlier programmatic instrument.

Federal Defendants would permit Cascadia to challenge Aloha Trout only on grounds unrelated to the legal status of the RMP BLM used to approve it. Fed. Mot. 18. The APA imposes no such requirement. A plaintiff challenging final agency action need not identify a defect wholly independent of the statutes, regulations, or governing instruments on which the agency relied. Cascadia's contention is precisely that BLM could not lawfully approve Aloha Trout under a plan that had not legally taken effect. The RMP's legal effectiveness is a predicate question, not a separate programmatic claim.

## VIII. RELIANCE AND POTENTIAL SYSTEM-WIDE CONSEQUENCES DO NOT WARRANT DISMISSAL.

Defendant-Intervenors repeatedly warn that a ruling in Cascadia's favor would destabilize a decade of BLM actions. Int. Mot. 2–4, 12–14. Federal Defendants similarly emphasize the breadth of Cascadia's prayer for relief and the possible consequences for other authorizations. Fed. Mot. 23–24. Those concerns do not answer the threshold question whether BLM lawfully approved Aloha Trout in 2026 by relying on an RMP that, under Cascadia's theory, never took legal effect.

Reliance interests and practical disruption may bear on the appropriate remedy, but they do not establish that a statutory prerequisite was satisfied or confer authority the governing statute withheld. *See Center for Food Safety v. Regan*, 56 F.4th 648, 659, 663–68 (9th Cir. 2022); *California Communities Against Toxics v. EPA*, 688 F.3d 989, 992–94 (9th Cir. 2012); *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Later reliance on the NW&CO RMP cannot cure a failure to satisfy the CRA's requirement that a rule subject to § 801(a)(1)(A) take effect

only after submission. If the RMP was subject to § 801(a)(1)(A), it did not become legally operative merely because BLM subsequently relied on it. That reliance therefore cannot establish that BLM lawfully approved Aloha Trout under a legally effective RMP. Defendant-Intervenors' reliance and disruption arguments thus concern the consequences of a ruling in Cascadia's favor, not whether Cascadia is correct on the merits.

The Moving Parties' system-wide warnings are also broader than the relief necessary to resolve this case. Cascadia challenges a single final agency action. The Court need not determine the validity of every project, permit, lease, right-of-way, timber sale, or other authorization under the NW&CO RMP to decide whether Aloha Trout was lawfully approved. Nor must Cascadia obtain sweeping systemic relief to prevail on its project-level APA claim.

To the extent reliance interests, administrative disruption, or effects on other BLM actions should limit the scope or form of relief, those issues can be resolved at the remedy stage; they do not justify threshold dismissal of Cascadia's First Amended Complaint. The Court can decide whether BLM lawfully approved Aloha Trout and tailor any relief to the final agency action before it. If the prayer for relief is broader than the relief available, the proper course is to tailor the remedy or permit amendment of the Second Amended Complaint – not dismiss an otherwise viable claim. *See* FED. R. CIV. P. 54(c); FED. R. CIV. P. 15(a)(2); *Z Channel Ltd. Partnership v. Home Box Office, Inc.*, 931 F.2d 1338, 1341 (9th Cir. 1991); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

## IX. CONCLUSION.

For the foregoing reasons, the Court should deny Federal Defendants' and Defendant-Intervenors' motions to dismiss. Cascadia challenges BLM's 2026 approval of Aloha Trout under the APA, and nothing in the CRA – or in the Moving Parties' preclusion, estoppel,

timeliness, laches, programmatic challenge, or reliance theories – bars the Court from deciding whether BLM lawfully relied on an RMP that had never taken legal effect.

Dated: November 13, 2026.

Respectfully submitted,

Susan Jane M. Brown (OSB #054607)
SILVIX RESOURCES
4107 NE Couch Street
Portland, OR 97232
(503) 680-5513
sjb@silvix.org

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Susan Jane M. Brown, hereby certify that on November 13, 2026, I caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated: November 13, 2026.

Respectfully submitted,

Susan Jane M. Brown (OSB #054607)
SILVIX RESOURCES
4107 NE Couch Street
Portland, OR 97232
(503) 680-5513
sjb@silvix.org

*Attorney for Plaintiff*